**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

SCHWAN'S COMPANY and SCHWAN'S
SHARED SERVICES, LLC,

               Plaintiffs,

v.

RONGXUAN CAI and CONAGRA BRANDS,
INC.,

               Defendants.

Civil No. 20-2157 (JRT/HB)

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO**
**DISMISS**

---

Rachel Zimmerman Scobie, Annelise S. Mayer, and Joseph Dubis,
**MERCHANT & GOULD P.C.**, 150 South Fifth Street, Suite 2200, Minneapolis,
MN 55402, for plaintiffs.

Christopher D. Liguori and Amie Marie Bauer, **TABET DIVITO & ROTHSTEIN**
**LLC**, 209 South LaSalle Street, Seventh Floor, Chicago, IL 60604; S. Jamal
Faleel, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500,
Minneapolis, MN 55415, for Conagra Brands, Inc., defendant.

Rongxuan Cai, 7678 Pine Street, Omaha, NE 68106, *pro se* defendant.

Plaintiffs Schwan's Company and Schwan's Shared Services, LLC (collectively

"Schwan's") filed an action against Defendant Rongxuan Cai alleging violation of the

federal and Minnesota trade secrets acts as well as breach of contract, conversion, unfair

competition, and unjust enrichment under Minnesota law. Schwan's filed an Amended

Complaint to add Defendant Conagra Brands, Inc. ("Conagra") as a defendant and to

allege violations of the federal and Minnesota trade secrets acts as well as tortious

interference with contractual relations and unjust enrichment under Minnesota law against Conagra.  Conagra filed a Motion to Dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because the Amended Complaint (1) does not establish that the statute of limitations on the statutory claims began to run before April 20, 2018; (2) plausibly alleges all elements of a tortious interference with contractual relations claim and does not establish waiver; and (3) plausibly alleges Conagra was unjustly enriched by information not covered by the trade secrets statutes, the Court will deny Conagra's Motion to Dismiss.

## BACKGROUND

**I.      FACTS**

Schwan's Company is a food manufacturing company.  (Am. Compl. ¶ 16, Apr. 20, 2021, Docket No. 62.)  Schwan's Shared Services, LLC is a wholly owned subsidiary of Schwan's Company and provides Schwan's Company with various management, information technology, human resources, finance, and legal services. (*Id.* ¶ 3.) Conagra is a food manufacturing company that competes with Schwan's.  (*Id.* ¶¶ 31, 51–53.) Schwan's and Conagra produce several similar food products and distribute them into the same markets.  (*Id.* ¶¶ 17, 33, 51–53.)

Cai worked for Schwan's from June 30, 2003 until December 18, 2017 first as a Research Scientist and then as a Principal Research Scientist. (*Id.* ¶¶ 19, 28, 30–31.) While

working at Schwan's, Cai worked on research relating to the properties and performance of yeast and flour, dough, moisture and rheology, protein content in cheese, and development of ingredient technologies for use in pizza crusts and frozen pies.  (*Id.* ¶ 27.)

On November 8, 2017, Conagra offered Cai a job which Cai accepted two days later. (*Id.* ¶ 32.)   On Friday, December 15, 2017, Cai submitted a letter of resignation to Schwan's requesting an effective date of January 5, 2018.  (*Id.* ¶ 28; Am. Compl., Ex. D, Apr. 20, 2021, Docket No. 62-3.)  When he came to work on Monday, December 18, 2017, Cai was asked by his supervisor if he intended to work for a competitor after leaving Schwan's.  (Am. Compl. ¶ 30.)  Schwan's alleges that Cai denied that he did.  (*Id.*)  Later that day, however, Schwan's learned this was not true and that Cai had accepted a job with Conagra.  (*Id.* ¶ 31.)  Schwan's immediately terminated Cai and escorted him from Schwan's property.  (*Id.*)

Cai and Schwan's signed multiple agreements related to his employment throughout his time at Schwan's.   On his first day of work in 2003, Cai signed an "Employment, Confidentiality & Noncompete Agreement." (*Id.* ¶ 20; Am. Compl., Ex. A, Apr. 20, 2021, Docket No. 62-1.)   On March 22, 2005, Cai signed a Receipt and Acknowledgement of the Schwan's Employee Handbook and Schwan's Code of Ethics. (Am. Compl. ¶ 23.)[1] On February 15, 2011, Cai signed an updated but similar employment

---

[1] Schwan's provided the Court with Cai's signed document acknowledging receipt of the Employee Handbook and Code of Ethics but did not provide the Court with copies of the

agreement to the one he signed in 2003 entitled "Employment, Confidentiality, Ownership & Noncompete Agreement." (*Id.* ¶ 24; Am. Compl., Ex. C, Apr. 20, 2021, Docket No. 62-3.)

The 2011 updated agreement contains several relevant provisions including that (1) Cai will return all Schwan's property upon termination; (2) during his employment, Cai will have access to confidential and proprietary information owned by Schwan's; (3) Cai may not disclose that information without authorization by Schwan's; (4) Cai may not use the information for his own or a third party's benefit, including to seek employment, or to Schwan's detriment; and (5) Schwan's will retain sole ownership and benefits including rights to patents from any idea or product developed, created, or worked on by Cai during his employment and for one year afterwards unless Cai developed it on his own time, without Schwan's equipment, supplies, facilities, or trade secrets, and does not relate Schwan's business.   (*See* Am. Compl., Ex. C ¶¶ 2–3.)  The updated agreement contains a noncompete clause that bars Cai from working for "any business which competes with [Schwan's] in the geographic or job function areas assigned to" Cai for twelve months after termination of his employment with Schwan's.  (*Id.* ¶ 4.)

Additionally, Cai's resignation letter promised to transfer all his projects to other Schwan's employees.  (Am. Compl. ¶ 29; Am. Compl., Ex. D.)

---

Handbook or Code of Ethics themselves.  (*See* Am. Compl., Ex. 2, Apr. 20, 2021, Docket No. 62-2.)

Schwan's alleges it owns confidential and proprietary information and trade secrets in a wide range of technologies and areas at issue in this action.  Schwan's asserts that it has information and secrets on yeast, flour, and dough in particular frozen yeast, dough moisture, and dough rising.  (Am. Compl. ¶ 42.)  It also claims it has information and secrets on frozen bakery products and frozen dough.  (Id. ¶ 43.)  Schwan's asserts it derives significant value especially competitive value from this information and its secrecy.  (Id. ¶¶ 44–46.)  Schwan's claims to take significant physical, information technology, and legal steps to protect the security and secrecy of this information.  (Id. ¶¶ 47–50.)

Schwan's alleges that from the time Cai accepted the job at Conagra until he was escorted from Schwan's property, he accessed files containing Schwan's confidential and proprietary information and trade secrets on several projects related to grain, pizza crust, and encapsulated sugar, among other projects.  (Id. ¶ 33.)  According to Schwan's, there was no job-related justification for him to access much of this information and that he did so outside business hours.  (Id.)  Cai allegedly copied files to external storage devices including files with confidential and proprietary information and trade secrets shortly before his termination.  (Id. ¶ 34.)

Schwan's also alleges that Cai took physical property and materials that belong to Schwan's, including thirteen devices including storage devices containing Schwan's information, lab notepads, and other research information.  (*Id.* ¶¶ 35, 37.)  Schwan's

claims it was unaware of any of these issues until after Cai was terminated.  (*Id.* ¶ 36.)

Schwan's has sent Cai two letters—on January 26, 2018 and December 27, 2019—listing

the property it believed he still had and requesting its return.  (*Id.* ¶¶ 37, 40; Am. Compl,

Ex. E, Apr. 20, 2021, Docket No. 62-5; Am. Compl, Ex. F at 2–3, 7–9, Apr. 20, 2021, Docket

No. 62-6.)[2]  Although Cai returned some materials, Schwan's alleges that Cai has not

returned all its property.  (Am. Compl., Ex. E; Am. Compl. ¶ 41.)

On December 27, 2017—just nine days after Schwan's terminated him—Cai filed

two United States patent applications entitled (1) "Method of Making Frozen Dough and

Products Made Using the Method" and (2) "Microwaveable Frozen Breads and Method

of Making the Same."  (*Id.* ¶ 38.)  Cai also filed a Chinese patent application for the first

patent. (*Id.*)  Schwan's claims it was unaware that Cai had filed for the patents until the

United States patent applications were published on June 27, 2019.  (*Id.* ¶ 39.)  Schwan's

asked Cai to assign the patents to Schwan's because it claims they are rightfully Schwan's

property under Cai's employment agreement.  (Id. ¶ 40; Am. Compl., Ex. F.)  Cai has not

assigned them to Schwan's.  (Am. Compl. ¶ 41.)

Cai began working for Conagra on January 8, 2018.  (*Id.* ¶ 55.)  Three days before

that on January 5, 2018, Schwan's sent Conagra a letter notifying Conagra that Cai was a

former Schwan's employee and was in possession of confidential and proprietary

_____

[2] All citations to page numbers refer to the CM/ECF pagination.

information from Schwan's and asked Conagra to ensure that Cai did not use this information for Conagra's benefit. (*Id.* ¶ 54; Decl. of Christopher D. Liguori, Ex. 1, July 14, 2021, Docket No. 85.) Schwan's alleges that Conagra was, therefore, aware of Cai's exposure to Schwan's confidential, proprietary, and trade secret information. (Am. Compl. ¶ 57.)

According to the Amended Complaint, Cai told Conagra about the employment agreement between Schwan's and Cai, including informing Conagra about the noncompete clause. (*Id.* ¶ 56.)

Schwan's alleges that despite Conagra's knowledge that Cai possessed Schwan's information and of the employment agreement including the noncompete clause, Conagra took no steps to ensure that Cai did not participate in projects for Conagra on similar products and technologies or to ensure that Cai did not use Schwan's information and secrets. (*Id.* ¶¶ 58–59.) Cai allegedly disclosed and used Schwan's confidential, proprietary, and trade secrets information to help Conagra develop products. (*Id.* ¶ 60.)

## II. PROCEDURAL HISTORY

On October 13, 2020, Schwan's filed this action but only named Cai as a defendant. (Compl., Oct. 13, 2020, Docket No. 1.) After Cai answered, Schwan's and Cai began discovery. (Answer, Oct. 28, 2020, Docket No. 7; *see* Pl.'s Mem. Opp. Conagra's Mot. Dismiss ("Schwan's Mem. Opp.") at 2, Aug. 4, 2021, Docket No. 89.) This discovery

included a subpoena issued to Conagra—then just a third party.  (Schwan's Mem. Opp. at 2.)

Schwan's claims that because of information learned through discovery from Cai and Conagra, Schwan's learned it had a basis to assert claims again Conagra as well.  (*Id.*) In April 2021, Schwan's moved to amend its complaint, Cai did not oppose the motion, and Schwan's was granted leave to amend.  (Mot. Amend Compl., Apr. 15, 2016, Docket No. 55; Order Granting Pl's Unopposed Mot. Amend. Compl., Apr. 16, 2021, Docket No. 61.)

A few days later, on April 20, 2021, Schwan's filed an Amended Complaint naming Conagra as a defendant.  (Am. Compl.)  The Amended Complaint asserts four claims against Conagra: (1) violation of the federal Defend Trade Secrets Act; (2) violation of the Minnesota Uniform Trade Secrets Act; (3) tortious interference with contractual relations; and (4) unjust enrichment.  (*Id.* ¶¶ 61–82, 95–99, 115–20.)[3]

On July 14, 2021, Conagra filed a Motion to Dismiss seeking dismissal with prejudice of all four claims against it.  (Mot. Dismiss, July 14, 2021, Docket No. 82.)

---

[3] Schwan's did not alter its claims for relief against Cai.  It asserts six claims against him: (1) violation of the federal Defend Trade Secrets Act; (2) violation of the Minnesota Uniform Trade Secrets Act; (3) breach of contract; (4) conversion; (5) unfair competition; and (6) unjust enrichment.  (Am. Compl. ¶¶ 61–94, 100–20.)  Cai has answered the Amended Complaint but has not filed a motion to dismiss.  (Def. Cai's Answer to Am. Compl., June 11, 2021, Docket No. 79.)  The claims against him are unaffected by this Motion and Order.

**DISCUSSION**

I. **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include "more than labels and conclusions, and a formulaic recitation of a cause of action's elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

In reviewing a motion to dismiss, the Court may consider the allegations made in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

## II.    ANALYSIS

### A.    Counts I and II: Trade Secrets Statutory Claims

First, the Court must decide whether Schwan's can maintain its statutory trade secrets claims against Conagra.  The federal Defend Trade Secrets Act of 2016 ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376 (codified at 18 U.S.C. § 1836 *et seq.*) and the Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn. Stat. §§ 325C.01–.08, provide a private cause of action for misappropriation of trade secrets.[4]

To succeed on a trade secrets cause of action, the plaintiff must prove two elements: (1) the existence of a trade secret possessed by the plaintiff and (2) misappropriation of the trade secret by the defendant.  First, to prove existence, the plaintiff must show (1) it possessed information that derived independent economic value from its secrecy; (2) the information was not readily ascertainable by others; and (3) it took reasonable steps to keep the information secret.  18 U.S.C. § 1839(3); Minn. Stat. § 325C.01, subd. 5; *Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 938–39 (D. Minn. 2019).   Second, to prove misappropriation, the plaintiff must show the

---

[4] Schwan's asserts its misappropriation of trade secrets claims under both the DTSA and the MUTSA.  Both parties treat them identically and have not identified any relevant differences in the statutes or courts' interpretation of them.  Therefore, the Court will analyze the claims under these statutes together.  *See MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1017 n.1 (8th Cir. 2020); *Cambria Co. LLC v. Schuman*, No. 19-3145, 2020 WL 373599, at *3 (D. Minn. Jan. 23, 2020) ("The Court analyzes the claims together because the statutes have the same purpose and functionally the same definitions for key terms like 'trade secret,' 'misappropriation,' and 'improper means.'").

defendant acquired, disclosed, or used a trade secret without the consent of its owner when the defendant either used improper means to acquire it or knew or should have known, at the time of disclosure or use, it had been acquired by improper means or from someone with a duty to maintain its secrecy.  18 U.S.C. § 1839(5); Minn. Stat. § 325C.01, subd. 3; *Protégé Biomedical*, 394 F. Supp. 3d at 939.   "Improper means" includes breaching or inducing a breach of a duty to maintain the trade secret's secrecy.  18 U.S.C. § 1839(6); Minn. Stat. § 325C.01, subd. 2.

In its Motion to Dismiss, Conagra does not dispute that Schwan's properly alleged that Conagra misappropriated trade secrets from Schwan's.  Instead, Conagra seeks dismissal based on the running of the statute of limitations in DTSA and MUTSA.

A motion to dismiss is typically not the proper stage to resolve whether a claim is barred by a statute of limitations.  *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).  A statute of limitations issue is an affirmative defense, and the burden is on defendants to plead and prove bar by statutes of limitations.  *Id.*; *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); Fed. R. Civ. Pro. 8(c).[5]  There are, however, exceptions to this general rule.

---

[5] Under Minnesota law and therefore relevant to the MUTSA claim, bar by statute of limitations is also an affirmative defense the defendant typically has the burden of affirmatively pleading and proving.  *Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 326 (Minn. 2019). Therefore, the Court's analysis of this issue is identical regardless of whether federal or state law applies and applies equally to the DTSA and MUTSA claims.

Dismissal of a claim as barred by a statute of limitations may be proper "if the complaint itself shows that the claim is time-barred." *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015); *Jessie*, 516 F.3d at 713 n.2 ("[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."). A complaint establishes the statute of limitations defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up).

"To determine whether a 'complaint is self-defeating based on a statute of limitations,' a court must identify the relevant limitations period, the date the action was commenced, and the date the plaintiff's claims accrued." *Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, 493 F. Supp. 3d 764, 767 (D. Minn. 2020) (quoting *Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, No. 18-2951, 2019 WL 2009249, at *3 (D. Minn. May 7, 2019)).

DTSA and MUTSA both have a three-year statute of limitations. 18 U.S.C. § 1836(d); Minn. Stat. § 325C.06. For both, the statute of limitations begins once the misappropriation of the trade secret "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); Minn. Stat. § 325C.06.

The parties do not dispute that Schwan's action against Conagra commenced on April 20, 2021, when Schwan's amended its complaint to add Conagra. Therefore, the only issue is whether the face of the Amended Complaint establishes that Schwan's

discovered or should have discovered its misappropriation claims against Conagra by April 20, 2018.[6]

Conagra argues that it is clear on the face of the Amended Complaint that (1) Schwan's had sufficient facts such that it knew or should have known by January 2018 that it could bring trade secrets claims against Conagra or (2) even if not, through the exercise of reasonable diligence, Schwan's would have discovered its claim at least by April 20, 2018.  If the Complaint establishes either of these arguments, the trade secrets claims are time barred.

The Amended Complaint shows that by January 2018, Schwan's allegedly knew (1) Cai had lied about where he was going to work; (2) Cai was going to work for Conagra, a Schwan's competitor; (3) Cai had accessed Schwan's files containing trade secrets; (4) Cai had transferred those files to external devices shortly before leaving; (5) Cai had not returned those devices; and (6) that Schwan's put Conagra on notice that Cai had confidential and proprietary information and urged Conagra to take precautions on January 5, 2018.  (Am. Compl. ¶¶ 30–37, 54.)  None of these facts address whether

---

[6] Schwan's also argues in the alternative that even if it should have discovered its misappropriation claims by April 20, 2018, Conagra committed fraudulent concealment which tolled the statute of limitations.  Because the Complaint does not establish the statute of limitations began to run by April 20, 2018, the Court will not address this argument.  The Court will also not grant Schwan's leave to amend to allege facts supporting fraudulent concealment, because the request to do so is moot at this time.

**Conagra** had misappropriated any of Schwan's trade secrets.  All but the sixth fact, relates only to **Cai's** behavior, and the sixth fact addresses an action Schwan's took, not Conagra.[7]

These facts standing alone do not establish that Schwan's had sufficient information to allege a trade secrets claim against Conagra because none of these facts indicate Schwan's was aware of any wrongdoing by Conagra whatsoever.  These facts from January 2018 only allege bad acts by Cai.  While it is true that the Amended Complaint alleges Conagra failed to take adequate steps to ensure Cai did not improperly use information from Schwan's, the face of the Amended Complaint does not establish when Schwan's knew that Conagra failed to take adequate steps.  A reasonable inference is that Schwan's was unaware of and had no reason to know of any misappropriation by Conagra before April 20, 2018, even if Conagra hired someone Schwan's believed may have taken its information.  A possible inference is that Schwan's believed that Conagra fearing a lawsuit like this one would follow through on the letter, take precautions, and

---

[7] Conagra frames this sixth fact as demonstrating that Schwan's knew in January 2018 that Conagra had not provided any assurances in response to the January 5, 2018.  (Conagra's Mem. Supp. Mot. Dismiss at 8, July 14, 2021, Docket No. 84.)  The face of the Complaint, however, does not establish that Conagra had not provided proper assurances.  Even assuming the Amended Complaint establishes that Conagra did not respond, the failure to respond does not clearly establish that Schwan's knew Conagra had misappropriated its trade secrets.  The letter asks Conagra to take necessary precautions to prevent Cai from using the information and only asks Conagra to notify Schwan's **if** Conagra suspects that Cai is using Schwan's information.  (Decl. of Christopher D. Liguori, Ex. 1, July 14, 2021, Docket No. 85-1.)  Drawing all reasonable inferences in Schwan's favor as the Court must, it is possible Schwan's did not expect a response as it did not ask for one unless Conagra knew of wrongdoing.  It is, therefore, reasonable to infer that a failure to respond does not mean Schwan's knew or should have known that Conagra was misappropriating its trade secrets.

would not misappropriate Schwan's trade secrets even if it hired someone who might. Making all inferences in Schwan's favor, this would indicate Schwan's was at most aware of misappropriation by Cai, not by Conagra.

No other facts on the face of the Amended Complaint establish that Schwan's knew before April 20, 2018 that Conagra had misappropriated its secrets.

The statute of limitations is also triggered when "by the exercise of reasonable diligence [the misappropriation] should have been discovered." 18 U.S.C. § 1836(d); Minn. Stat. § 325C.06. Therefore, even though the facts of the Amended Complaint do not establish Schwan's was aware of misappropriation by Conagra, if the Amended Complaint establishes that by the exercise of reasonable diligence Schwan's should have discovered Conagra's alleged misappropriation by April 20, 2018, the claim would still be barred.

Whether a party exercised due diligence is normally a question of fact unsuited for summary judgment, much less a motion to dismiss. *See Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir. 1989).[8] Nothing in the Amended Complaint

---

[8] While addressing due diligence is typically unsuited for a motion to dismiss, there are rare cases where a complaint may establish a lack of due diligence or otherwise establish the plaintiff should have discovered the misappropriation. *See, e.g.*, *Ocimum Biosolutions (India) Ltd. v. LG Corp*, No. 19-2227, 2021 WL 931094, at *6–7, 6 n. 7 (D. Del. Mar. 11, 2021); *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-404, 2019 WL 1924992, at * 12–14 (N.D. Cal. Apr. 30, 2019); *Camick v. Holladay*, No. 17-1110, 2018 WL 1523099, at *6 (D. Kan. Mar. 28, 2018); *Kleiman v. Wright*, No. 18-80176, 2018 WL 6812914, at *14 (S.D. Fla. Dec. 27, 2018); *In re Cygnus Telecomms. Tech., LLC, Pat. Litig.*, 536 F.3d 1343, 1357 (Fed. Cir. 2008).

establishes that by reasonable diligence, Schwan's should have discovered misappropriation by Conagra.  Before April 20, 2018, Schwan's knew nothing about Conagra's actions and could not know anything without voluntary disclosure by Conagra.  Schwan's could not subpoena or otherwise compel Conagra to turnover information until it filed its suit against Cai in October 2020.  The Amended Complaint establishes that Schwan's took some steps including notifying Conagra and asking for voluntary disclosure, beginning an internal investigation, and trying to recover information from Cai.  Construing the facts in the light most favorable to Schwan's and drawing all inferences in

---

Conagra cites these in support of its motion.  These cases, however, are distinguishable from this case, because in these cases the plaintiffs alleged in their complaints that they knew at a minimum the defendants had the trade secrets information early enough to exhaust the statute of limitations.  For example, in *In re Cygnus Telecommunications Technology*, the complaint alleged the plaintiff knew the defendant had access to its technologies and knew that the defendant had released an end product with the same features about nine years before the plaintiff claimed the statute of limitations was triggered.  536 F.3d at 1357.  Here, the Amended Complaint does not allege that Schwan's knew before April 20, 2018 that Conagra had the information—only that it knew Cai did—and does not allege Schwan's launched any products that may have relied on its trade secrets launched between January 2018 and April 20, 2018.

Similarly, in *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, the Eighth Circuit concluded on appeal of a grant of summary judgment that the plaintiff had information sufficient to place it on inquiry notice and to trigger the discovery rule and the plaintiff's duty to investigate.  920 F.3d 560, 564–66 (8th Cir. 2019).  In *CMI Roadbuilding*, products using the plaintiff's trade secrets were advertised and sold for about eleven years before the plaintiff argued the statute of limitations should have started to run.  *Id.*  Moreover, the relevant division of the defendant was formed by several former employees of the plaintiff and the defendant advertised for more than a year before the plaintiff argued the statute of limitations should have been triggered that its employees gained knowledge from the plaintiff.  *Id.* at 563.  Here, on a motion to dismiss, the Amended Complaint only establishes Schwan's had just three months to engage in an investigation before April 20, 2018 and it does not allege any products with Cai's information were being sold or advertised.  Cai was but one employee and Schwan's was not advertising that it was putting his knowledge to work.

its favor, these facts do not clearly establish Schwan's should have discovered Conagra's alleged misappropriation by April 20, 2018.

The Amended Complaint does allege facts creating a reasonable inference that Conagra misappropriated Schwan's trade secrets, but it does not give any indication when Conagra misappropriated the trade secrets or when Schwan's did or should have with reasonable diligence discovered the misappropriation.[9]

Accordingly, the Amended Complaint itself has not shown that the trade secrets claims are barred by the statutes of limitations.[10]  The Court will deny the motions to dismiss the DTSA and MUTSA claims.

**B.     Count IV: Tortious Interference with Contractual Relations Claim**

Next the Court must decide whether Schwan's can maintain its claim that Conagra tortiously interfered with Schwan's contractual relations.

Under Minnesota law, a claim for tortious interference with contractual relations requires: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the

---

[9] Because the Amended Complaint also does not establish exactly when Conagra began to misappropriate Schwan's trade secrets, it is possible that Conagra may not have violated DTSA and MUTSA until after April 20, 2018 meaning that even if Schwan's immediately learned Schwan's had misappropriated its trade secrets, the statutes of limitations still would not bar the claims.

[10] Schwan's also requested leave to amend to add factual allegations pertaining to its knowledge and diligence if the Court found that the face of the Amended Complaint barred the action by the running of the statute of limitations.  Because the Court concludes that it does not, the Court will not grant leave to amend to allege these additional facts, because the request to do so is moot at this time.

contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (quotation omitted); *accord E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012).

The Amended Complaint and the attached employment agreements plausibly alleges the first, third, and fifth elements: the existence of a valid contract, procurement of the contract's breach by Conagra, and that Schwan's has suffered harm as a result of this breach. Conagra instead argues for dismissal of this claim on three other grounds.

Conagra argues that this claim must be dismissed because (1) the Amended Complaint shows Conagra was not aware of the contract at the time needed to tortiously interfere with it; (2) tortious interference claims require independent wrongfulness and the Amended Complaint does not adequately allege it; and (3) the Amended Complaint shows that Schwan's has waived the claim.

First, Conagra argues that this claim must be dismissed because the Amended Complaint shows that Conagra was not aware of any contract when it allegedly intentionally interfered with it. Specifically, it argues that the Amended Complaint does not allege that Conagra was aware of the employment agreement in early November 2017 when it offered Cai a job and he accepted. (Conagra's Mem. Supp. Mot. Dismiss at 13, July 14, 2021, Docket No. 84.)

The Amended Complaint, however, alleges that Conagra tortiously interfered with the contract by assigning Cai to work on projects related to his work at Schwan's. (Am.

-18-

Compl. ¶ 67.)  The employment agreement provides that Cai would not "engage in or assist others to engage in . . . any business which competes with [Schwan's] in the . . . job function areas assigned to [Cai]."  (Am. Compl., Ex. C at 3.)  In other words, the Amended Complaint—alongside the exhibit embraced the Amended Complaint—alleges that Conagra tortiously interfered with the employment agreement if Conagra was aware of the agreement on the date it assigned Cai to work in any "job function areas" he had also been assigned to with Schwan's and if the parties compete in those areas.  Construed in the light most favorable to Schwan's, whenever Cai assisted Conagra in an overlapping area, he breached the contract, and therefore Conagra just needed to have knowledge at that time.

It is reasonable to infer that Conagra was aware of the employment agreement when it allegedly procured Cai's breach.  Although the Amended Complaint does not specifically allege when Conagra learned of the contract, a complaint need not contain such detailed facts.  *See Twombly*, 550 U.S. at 555.  The Amended Complaint alleges Cai informed Conagra of the employment agreement including the noncompete clause.  (Am. Compl. ¶ 56.)  As this fact is included in the discussion of events from January 2018 and Schwan's sent a letter on January 5 informing Conagra of the areas Cai had worked in, drawing all reasonable inferences in Schwan's favor, the Amended Complaint plausibly alleges that Conagra was aware of the employment agreement and the relevant work that would violate the contract when it assigned Cai to areas of work that breached the

contract. Therefore, the Complaint plausibly alleges Conagra's knowledge of the contract when it allegedly procured the breach.

Next, Conagra asserts that a tortious inference claim requires the defendant's actions to have been independently wrongful and the Amended Complaint does not properly allege this. Schwan's argues that independent wrongfulness is not an element of tortious interference with contractual relations claim. Regardless of the resolution of this legal question,[11] the Amended Complaint when construed in the light most favorable to Schwan's adequately alleges Conagra's actions were independently wrongful. It alleges that Conagra's procurement of Cai's breach allowed Conagra to illegally use Schwan's confidential and proprietary information and for Conagra to be unjustly enriched.

---

[11] Because the Court finds that the Amended Complaint adequately alleges independent wrongfulness, the Court will not decide whether a defendant's actions must be independently wrongful to maintain a tortious interference with contractual relations claim. The Court notes, however, that Conagra appears to draw this argument mainly from cases addressing "tortious interference with prospective advantage" claims. While there is overlap between prospective advantage and contractual relations claims, they are not identical. *See, e.g.*, *Matson Logistics, LLC v. Smiens*, No. 12-400, 2012 WL 2005607, at *10–11 (D. Minn. June 5, 2012) (distinguishing between the two claims). The existence of a valid contract in a contractual relations claim creates preexisting legal rights and obligations that alter the landscape.

Moreover, assuming the defendant's actions must be independently wrongful, whether something is independently wrongful may apply to the "without justification" element. *See Harman v. Heartland Food Co.*, 614 N.W.2d 236, 241 (Minn. App. 2000) (addressing only the "without justification" element). Minnesota law places the burden of proving interference was justified on the defendant and it is "ordinarily a factual determination of what is reasonable conduct under the circumstances." *Kallok*, 573 N.W.2d at 362. Resolving a factual determination of what is reasonable under the circumstances is typically resolved at a later stage rather than in a motion to dismiss. *See Kjesbo v. Ricks*, 517 N.W.2d 585, 588–89 (Minn. 1994).

Because the Amended Complaint adequately alleges independent wrongfulness, the Court will not resolve these legal issues in resolving this Motion to Dismiss.

-20-

Therefore, assuming but without deciding that independent wrongfulness is part of this claim, the Amended Complaint adequately alleges it.

Finally, Conagra argues Schwan's has waived this claim because it has known since December 2017 that Cai was going to work for Conagra and did nothing to enforce its alleged contractual rights until this filing this case, well beyond the expiration of the noncompete clause's twelve-month term. Under Minnesota law, waiver "is the intentional relinquishment of a known right." *White v. City of Elk River*, 840 N.W.2d 43, 51 (Minn. 2013) (citing *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009). Waiver has two elements: "(1) knowledge of the right, and (2) an intent to waive the right." *Id.* Waiver can be express or implied, knowledge can be either actual or constructive, and intent can be inferred from conduct. *Id.* It is generally a question of fact that rarely can be inferred as a matter of law. *Id.* Instead, waiver is generally an affirmative defense. *See* Minn. R. Civ. P. 8.03; Fed. R. Civ. P. 8(c); *Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1085 (D. Minn. 2017). Therefore, the party asserting waiver bears the burden of proving both knowledge and intent. *White*, 840 N.W.2d at 51.

Drawing all reasonable inferences in favor of Schwan's, the face of the complaint does not establish waiver. First, the noncompete clause does not wholly preclude Cai from working for Conagra, just in the same "geographic or job function areas." Therefore, a reasonable inference can be made that Schwan's did not know that the noncompete

was violated until much later despite knowing Cai was going to work Conagra.  Second, Schwan's sent letters during the term of the noncompete expressing its intent to take legal action if it learned its rights were being violated.  These inferences and other facts in the Amended Complaint show that the Amended Complaint does not establish waiver at this stage.

Accordingly, the Amended Complaint, when construed in the light most favorable to Schwan's, plausibly alleges a tortious interference with contractual relations claim.

### C.    Count VII: Unjust Enrichment

Finally, the Court must determine whether, as Conagra argues, Schwan's common law unjust enrichment claim is displaced by MUTSA.  MUTSA "displace[s] conflicting tort, restitutionary, and other law of [Minnesota] providing civil remedies for misappropriation of a trade secret."  Minn. Stat. § 325C.07(a).

MUTSA, however, does not displace "other civil remedies that are not based upon misappropriation of a trade secret."  *Id.* § 325C.07(b)(2).  Only causes of action dependent on trade secrets are displaced, not claims that are based on confidential information that are not trade secrets.  *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 205 (D. Minn. 1988); *see also TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-1356, 2013 WL 6827348, at *5 (D. Minn. Dec. 26, 2013).  Thus, a plaintiff may "maintain separate causes of action 'to the extent that the causes of action have "more" to their factual allegations than the mere misuse or misappropriation of trade secrets.'"  *SL Montevideo*

*Technology, Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003)

(quoting *Micro Display Sys.*, 699 F. Supp. at 205).

Some cases in this district have resulted in dismissing unjust enrichment and other common law claims because of MUTSA; while in other cases the Court has denied a motion to dismiss in similar contexts. *Compare Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 940–41 (D. Minn. 2019); *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1039 (D. Minn. 2013), *with Unitherm Food Sys., Inc. v. Hormel Foods Corp.*, No. 14-4034, 2015 WL 366442, at *4 (D. Minn. Jan. 27, 2015); *TE Connectivity Networks*, 2013 WL 6827348, at *5; *cf. Micro Display Sys.*, 699 F. Supp. at 205 (rejecting displacement at summary judgment). The question that distinguishes these cases from each other is whether the complaint uses identical factual allegations defining both trade secrets for the statutory claims and for the unjust enrichment and other common law claims. For example, in *Protégé Biomedical*, the complaint alleged exactly the same facts for both claims, treating the information "as one unit throughout the Complaint" leading the unjust enrichment claim to be dismissed. 394 F. Supp. 3d at 940–41. (*See also Protégé Biomedical, LLC v. Z-Medica, LLC*, Case No. 18-3227, Am. Compl. ¶¶ 30, 68–74, 78–84, Jan. 25, 2019, Docket No. 52 (defining the information collectively and using that definition for both claims).) However, in *Unitherm Food Systems*, the unjust enrichment claim was "not based solely on [the defendant's] alleged trade-secret appropriation" and therefore the claim was not dismissed. 2015 WL 366442, at *4.

Schwan's trade secrets and unjust enrichment claims are similar.  Such redundancy alone, however, is not sufficient to dismiss the claims if Schwan's alleges more than misappropriation of trade secrets.  *See Micro Display Sys.*, 699 F. Supp. at 205.  Schwan's allegations in its unjust enrichment claim are slightly different than in its trade secrets claims; it alleges that Conagra misappropriated "recipes and methods" that are not trade secrets protected by DTSA or MUTSA.  (Am. Compl. ¶¶ 116–20.)  Drawing all inferences in Schwan's favor as the Court must at this stage, it is plausible that Conagra was unjustly enriched by something that is not covered by DTSA or MUTSA allowing this claim to survive for now.  Although Schwan's unjust enrichment claim is not displaced at this stage, if it is ultimately determined as the facts develop that Schwan's unjust enrichment claim is nothing more than a trade secrets claim, it may be displaced at a later stage.[12]  *See TE Connectivity Networks*, 2013 WL 6827348, at *5.

## CONCLUSION

The Court will not dismiss any of Schwan's claims against Conagra as the face of the Amended Complaint adequately alleges each claim.  It does not establish the statute of limitations has run for the DTSA and MUTSA claims or that Schwan's waived the tortious interference with contractual relations claim.   The Amended Complaint

---

[12] Both DTSA and MUTSA have expansive definitions and displace many possible claims.  *See* 18 U.S.C. § 1839; Minn. Stat. § 325C.01.  Therefore, at later stages, the facts will need to show that Conagra was unjustly enriched by something outside these expansive definitions for Schwan's to succeed on this claim.

adequately alleges all elements of these claims including that Conagra's actions were independently wrongful for the tortious interference claim, though the Court does not decide whether such an allegation is necessary.  Finally, Schwan's has adequately alleged that Conagra was unjustly enriched by more than just misappropriation of trade secrets, so the unjust enrichment claim is not displaced at this time.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Conagra's Motion to Dismiss [Docket No. 82] is **DENIED**.

DATED:  December 2, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court