## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

SCHWAN'S COMPANY and SCHWAN'S
SHARED SERVICES, LLC,

                       Civil No. 20-2157 (JRT/DTS)

                Plaintiffs,

v.

       **ORDER GRANTING PLAINTIFFS' MOTION**

         **TO DISMISS DEFENDANT'S**

RONGXUAN CAI and CONAGRA BRANDS,       **COUNTERCLAIM**

                Defendants.

Anneliese S. Mayer, Elisabeth Muirhead, Joseph Dubis, and Rachel Zimmerman Scobie, **MERCHANT & GOULD P.C.**, 150 South Fifth Street, Suite 2200, Minneapolis, MN 55402, for plaintiffs.

Christopher D. Liguori, Daniel Konieczny, and Kyle A. Cooper, **TABET DIVITO & ROTHSTEIN LLC**, 209 South LaSalle Street, Seventh Floor, Chicago, IL 60604; Emily A. Ambrose and S. Jamal Faleel, **NORTON ROSE FULBRIGHT US LLP**, 60 South Sixth Street, Suite 2500, for Conagra Brands, Inc., for defendants.

Rongxuan Cai, 4678 Pine Street, Omaha, NE 68106, *pro se* defendant.

Defendant Conagra Brands ("Conagra"), as part of its Amended Answer to Plaintiffs' Schwan's Company and Schwan's Shared Services LLC ("Schwan's")'s action alleging misappropriation of trade secrets, filed a counterclaim against Schwan's. In its counterclaim, Conagra asserts that it is entitled to relief under Minn. Stat. § 325C.04 because Schwan's has made "a claim of misappropriation . . . in bad faith." Conagra seeks its attorneys' fees, costs, and other appropriate relief. Schwan's now brings this motion to dismiss that counterclaim, arguing that section 325C.04 does not establish a cause of

action and, even if it did, that Conagra has not pled facts sufficient to assert such a claim. Because Minn. Stat. § 325C.04 does not establish a cause of action to allow this type of counterclaim, the Court will grant Schwan's Motion to Dismiss.  Alternatively, even if properly brought as a counterclaim, Conagra's claim fails because Conagra does not state a claim for bad faith that is plausible on its face.

**BACKGROUND**

### I.   FACTS

Schwan's Company is a food manufacturing company.  (Am. Compl. ¶ 16, Apr. 20, 2021, Docket No. 62.)  Schwan's Shared Services, LLC is a wholly owned subsidiary of Schwan's Company and provides Schwan's Company with various management, information technology, human resources, finance, and legal services.  (*Id.* ¶ 3.)  Conagra is a food manufacturing company that competes with Schwan's.  (*Id.* ¶¶ 31, 51–53.) Schwan's and Conagra produce several similar food products and distribute them into the same markets.  (*Id.* ¶¶ 17, 33, 51–53.)

Cai worked for Schwan's from June 30, 2003, until December 18, 2017—first as a Research Scientist and then as a Principal Research Scientist.  (*Id.* ¶¶ 19, 28, 30–31.)  While working at Schwan's, Cai worked on research relating to the properties and performance of yeast and flour, dough, moisture and rheology, protein content in cheese, and development of ingredient technologies for use in pizza crusts and frozen pies.  (*Id.* ¶ 27.)

On November 8, 2017, Conagra offered Cai a job, which Cai accepted two days later. (*Id.* ¶ 32.) On Friday, December 15, 2017, Cai submitted a letter of resignation to Schwan's requesting an effective date of January 5, 2018. (*Id.* ¶ 28; Am. Compl., Ex. D, Apr. 20, 2021, Docket No. 62-3.) When he came to work on Monday, December 18, 2017, Cai was asked by his supervisor if he intended to work for a competitor after leaving Schwan's. (Am. Compl. ¶ 30.) Schwan's alleges that Cai denied that he did. (*Id.*) Later that day, however, Schwan's learned this was not true and that Cai had accepted a job with Conagra. (*Id.* ¶ 31.) Schwan's immediately terminated Cai and escorted him from Schwan's property. (*Id.*)

Cai and Schwan's signed multiple agreements related to his employment throughout his time at Schwan's. On his first day of work in 2003, Cai signed an "Employment, Confidentiality & Noncompete Agreement." (*Id.* ¶ 20; Am. Compl., Ex. A, Apr. 20, 2021, Docket No. 62-1.) On March 22, 2005, Cai signed a Receipt and Acknowledgement of the Schwan's Employee Handbook and Schwan's Code of Ethics. (Am. Compl. ¶ 23.) On February 15, 2011, Cai signed an updated but similar employment agreement to the one he signed in 2003 entitled "Employment, Confidentiality, Ownership & Noncompete Agreement." (*Id.* ¶ 24; Am. Compl., Ex. C, Apr. 20, 2021, Docket No. 62-3.)

The 2011 updated agreement contains several relevant provisions, including that (1) Cai will return all Schwan's property upon termination; (2) during his employment, Cai will have access to confidential and proprietary information owned by Schwan's; (3) Cai may not disclose that information without authorization by Schwan's; (4) Cai may not use the information for his own or a third party's benefit, including to seek employment, or to Schwan's detriment; and (5) Schwan's will retain sole ownership, benefits, and rights of patents from any idea or product developed, created, or worked on by Cai during his employment and for one year afterwards unless Cai developed it on his own time, without Schwan's equipment, supplies, facilities, or trade secrets, and the idea or product does not relate to Schwan's business. (*See* Am. Compl., Ex. C ¶¶ 2–3.) The updated agreement also contains a noncompete clause that bars Cai from working for "any business which competes with [Schwan's] in the geographic or job function areas assigned to" Cai for twelve months after termination of his employment with Schwan's. (*Id.* ¶ 4.) Additionally, Cai's resignation letter promised to transfer all his projects to other Schwan's employees. (Am. Compl. ¶ 29; Am. Compl., Ex. D.)

Schwan's alleges it owns confidential and proprietary information and trade secrets in a wide range of technologies and areas at issue in this action. Schwan's asserts that it has information and secrets on yeast, flour, and dough, in particular frozen yeast, dough moisture, and dough rising. (Am. Compl. ¶ 42.) It also claims it has information and secrets on frozen bakery products and frozen dough. (*Id.* ¶ 43.) Schwan's asserts it

derives significant value, especially competitive value, from this information and its secrecy. (*Id.* ¶¶ 44–46.) Schwan's claims to take significant physical, technological, and legal steps to protect the security and secrecy of this information. (*Id.* ¶¶ 47–50.)

Schwan's alleges that from the time Cai accepted the job at Conagra until he was escorted from Schwan's property, he accessed files containing Schwan's confidential and proprietary information and trade secrets on several projects related to grain, pizza crust, and encapsulated sugar, among other projects. (*Id.* ¶ 33.) According to Schwan's, there was no job-related justification for him to access much of this information and he did so outside business hours. (*Id.*) Cai allegedly copied files to external storage devices including files with confidential and proprietary information and trade secrets shortly before his termination. (*Id.* ¶ 34.)

Schwan's also alleges that Cai took physical property and materials that belong to Schwan's, including thirteen storage devices containing Schwan's information, lab notepads, and other research information. (*Id.* ¶¶ 35, 37.) Schwan's claims it was unaware of any of these issues until after Cai was terminated. (*Id.* ¶ 36.) Schwan's has sent Cai two letters—on January 26, 2018, and December 27, 2019—listing the property it believed he still had and requesting its return. (*Id.* ¶¶ 37, 40; Am. Compl, Ex. E, Apr. 20, 2021, Docket No. 62-5; Am. Compl, Ex. F at 2–3, 7–9, Apr. 20, 2021, Docket No. 62-6.) Although Cai returned some materials, Schwan's alleges that Cai has not returned all its property. (Am. Compl., Ex. E; Am. Compl. ¶ 41.)

On December 27, 2017—just nine days after Schwan's terminated him—Cai filed two United States patent applications entitled (1) "Method of Making Frozen Dough and Products Made Using the Method" and (2) "Microwaveable Frozen Breads and Method of Making the Same." (*Id.* ¶ 38.)  Cai also filed a Chinese patent application for the first patent.  (*Id.*) Schwan's claims it was unaware that Cai had filed for the patents until the United States patent applications were published on June 27, 2019.  (*Id.* ¶ 39.)  Schwan's asked Cai to assign the patents to Schwan's because it claims they are rightfully Schwan's property under Cai's employment agreement.  (*Id.* ¶ 40; Am. Compl., Ex. F.)  Cai has not assigned them to Schwan's.  (Am. Compl. ¶ 41.)

Cai began working for Conagra on January 8, 2018.  (*Id.* ¶ 55.)  Three days before that on January 5, 2018, Schwan's sent Conagra a letter notifying Conagra that Cai was a former Schwan's employee and was in possession of confidential and proprietary information from Schwan's and asked Conagra to ensure that Cai did not use this information for Conagra's benefit.  (*Id.* ¶ 54; Decl. of Christopher D. Liguori, Ex. 1, July 14, 2021, Docket No. 85.)  Schwan's alleges that Conagra was, therefore, aware of Cai's exposure to Schwan's confidential, proprietary, and trade secret information.  (Am. Compl. ¶ 57.)

According to the Amended Complaint, Cai told Conagra about the employment agreement between Schwan's and Cai, including informing Conagra about the noncompete clause.  (*Id.* ¶ 56.)  Schwan's alleges that despite Conagra's knowledge that

Cai possessed Schwan's information and of the employment agreement including the noncompete clause, Conagra took no steps to ensure that Cai did not participate in projects for Conagra on similar products and technologies or to ensure that Cai did not use Schwan's information and secrets. (*Id.* ¶¶ 58–59.) Cai allegedly disclosed and used Schwan's confidential, proprietary, and trade secrets information to help Conagra develop products. (*Id.* ¶ 60.)

According to the Second Amended Complaint, on December 27, 2019, after learning of Cai's published patent applications, Schwan's again wrote to Conagra to confirm that they had taken the necessary steps to ensure that Cai was not using any of Schwan's confidential, proprietary, and trade secret information in his work for Conagra. (Sec. Am. Compl. ¶ 66, Jan. 14, 2022, Docket No. 157.) On January 20, 2020, Conagra's chief counsel wrote Schwan's, acknowledging receipt of the January 5, 2018, letter and represented that Cai's work at Conagra is distinct from the projects Schwan's identified in the letter. (*Id.* ¶¶ 67-68.) The letter further stated that Conagra had no reason to believe Cai's work for them violated any of Schwan's rights or commitments. (*Id.* ¶ 69.) Schwan's alleges that this letter was written and sent with the intent to deceive them and hide Conagra's role in Cai's unlawful conduct.[1] (*Id.* ¶ 71.) Further, Schwan's alleges that through discovery it learned that Cai's work at Conagra overlapped with work he

---

[1] Schwan's asserts that only after it initiated this lawsuit and obtained discovery from Cai, and subsequently Conagra, did it learn that Conagra's representations were false. (*Id.* ¶ 72.)

performed for Schwan's that involved proprietary, highly confidential, and trade secret information, and that Cai's Conagra work implicated misappropriated trade secrets.  (*Id.* ¶ 73.)

## II.    PROCEDURAL HISTORY

On October 13, 2020, Schwan's filed this action but only named Cai as a defendant. (Compl., Oct. 13, 2020, Docket No. 1.)  After Cai answered, Schwan's and Cai began discovery.  (Answer, Oct. 28, 2020, Docket No. 7; *see* Pl.'s Mem. Opp. Conagra's Mot. Dismiss ("Schwan's Mem. Opp.") at 2, Aug. 4, 2021, Docket No. 89.)  This discovery included a subpoena issued to Conagra—then just a third party.  (Schwan's Mem. Opp. at 2.)

Schwan's claims that because of information learned through discovery from Cai and Conagra, Schwan's learned it had a basis to assert claims again Conagra as well.  (*Id.*) In April 2021, Schwan's moved to amend its complaint, Cai did not oppose the motion, and Schwan's was granted leave to amend.  (Mot. Amend Compl., Apr. 15, 2016, Docket No. 55; Order Granting Pl's Unopposed Mot. Amend. Compl., Apr. 16, 2021, Docket No. 61.)

A few days later, on April 20, 2021, Schwan's filed an Amended Complaint naming Conagra as a defendant.  (Am. Compl.)  The Amended Complaint asserts four claims against Conagra: (1) violation of the federal Defend Trade Secrets Act; (2) violation of the

Minnesota Uniform Trade Secrets Act; (3) tortious interference with contractual relations; and (4) unjust enrichment.  (*Id.* ¶¶ 61–82, 95–99, 115–20.)

On July 14, 2021, Conagra filed a Motion to Dismiss seeking dismissal with prejudice of all four claims against it.  (Mot. Dismiss, July 14, 2021, Docket No. 82.)  The Court denied the motion.  (Order Denying Def. Mot. Dismiss at 2, Dec. 2, 2021, Docket No. 126.)  The Court determined that the First Amended Complaint did not establish that the statute of limitations on the statutory claims began to run before April 20, 2018.  (*Id.*)  Further, the Court determined that the First Amended Complaint plausibly alleged all elements of a tortious interference claim, did not establish waiver, and plausibly alleged Conagra was unjustly enriched by information not covered by the trade secrets statutes.  (*Id.*)

On January 14, 2022, Schwan's filed a Second Amended Complaint, providing the detailed basis underlying Schwan's assertion that fraudulent concealment bars Conagra's statute of limitations defense.  (Sec. Am. Compl., Jan. 14, 2022, Docket No. 157.)  On January 28, 2022, Conagra filed its Answer and Affirmative Defenses.  (Def. Ans., Jan. 28, 2022, Docket No. 164.)  On April 29, 2022, Conagra sought leave to amend its Answer and Affirmative Defenses to include a new counterclaim.  (Def. Mot. Am. Pleadings, Apr. 29, 2022, Docket No. 200.)  Schwan's consented to Conagra's filing of the pleading, reserving the right to challenge the purported counterclaim under Rule 12 of the Federal Rules of Civil Procedure.  (Letter to MJ, May 6, 2022, Docket No. 206.)  Conagra filed the Amended

Answer, Affirmative Defenses, and Counterclaim on May 6, 2022.  (Def. Am. Ans., May 6, 2022, Docket No.  207.)  On May 27, Schwan's brought a motion to dismiss Conagra's counterclaim.  (Pl. Mot. to Dismiss, May 27, 2022, Docket No. 211.)

## DISCUSSION

### I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings."  *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint

-10-

"does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   ANALYSIS

### A.   Attorney's Fees Under Minn. Stat. § 325C.04 as a Counterclaim

The parties agree that Conagra may eventually have the right to attorney's fees if it prevails on the merits of the case and proves the claim of misappropriation was made in bad faith.  They disagree, however, on when that right is properly asserted.  Conagra insists it may bring the claim now as a counterclaim, while Schwan's argues that the motion is proper once the Court has decided which party has prevailed on the merits.

Minn. Stat. § 325C.04 provides that "[i]f a claim of misappropriation is made in bad faith . . . the court may award reasonable attorney's fees **to the prevailing party.**" (emphasis added).

While some Minnesota courts have granted relief under this statute when brought as a counterclaim, no Minnesota court has directly addressed the question of whether a counterclaim is the proper vehicle for relief.  Despite Conagra's argument to the contrary, the Court is not persuaded that some Minnesota courts "**implicitly** approved the assertion of counterclaims" under the section when it "neither questioned nor remarked on the propriety of asserting section 325C.04 as a counterclaim and treated the counterclaims as proper."  (Def. Mem. Opposing Mot. Dismiss at 5, June 17, 2022, Docket. No. 228.)

(emphasis added.)  That defendants in certain cases were allowed to bring such claims does not show a court's acquiescence where the issue was not directly challenged or litigated.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (finding that under the principle of "party presentation," courts "do not, or should not, sally forth each day looking for wrongs to right" but instead "wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties") (internal quotations omitted).  The Court must therefore address this issue as a matter of first impression.

In doing so, the Court first looks to the plain language of the statute.  *See State v. Randolph*, 800 N.W.2d 150, 154 (Minn.2011) (When interpreting a statute, the court must first determine "whether the statute's language, on its face, is clear or ambiguous" and "construe words and phrases according to their plain and ordinary meaning.") (citation omitted) (internal quotation marks omitted).  Minn. Stat. § 325C.04 allows reasonable attorneys' fees to the **prevailing** party—suggesting the issue of attorneys' fees is ripe only at the conclusion of litigation of a case when a party has succeeded on the merits.  Here, neither party has yet **prevailed** because litigation is ongoing.  Thus, such claim is not proper at this time.

This reading of the statute is supported by a prior decision of the Minnesota Supreme Court, which suggested that bad faith analysis is best addressed by the Court at the **conclusion** of litigation rather than by a jury in the **midst** of litigation.  *See Anderson*

-12-

*v. Medtronic, Inc.*, 382 N.W.2d 512, 515 (Minn. 1986) (finding that when a statutory provision shifts attorney's fees on the basis of bad faith "with respect to the litigation itself as opposed to bad faith in the underlying action which is the basis of the suit," then the existence of bad faith is "an issue which must be decided by the trial court, not the jury."). Section 325C.04 is a fee-shifting provision, and it asks whether there is bad faith with respect to bringing the litigation itself. Because of the Court's need to analyze a party's conduct during the full lifespan of the litigation with respect to the bad faith query, a reading of the statute that requires a post-trial motion for attorney's fees is more appropriate.

This reading also comports with how courts in this Circuit have handled similar fee-shifting provisions in other federal and state statutes. *See, e.g.*, *Bond v. USAA Fed. Sav. Bank*, 11 F. Supp. 3d 940, 942 (D. Minn. 2014) (dismissing a counterclaim for attorney's fees under the EFTA); *Kirscher v. Messerli & Kramer, P.A.*, No. 05-1901, 2006 WL 145162 at *6–7 (D. Minn. Jan. 18, 2006) (dismissing counterclaim for attorney's fees under the FDCPA but permitting the defendant to request attorney's fees via a motion); *Pinebrook Holdings v. Narup*, No. 4:191562, 2020 WL 871578 at *9 (E.D. Mo. Feb. 21, 2020) (dismissing "bad faith" counterclaim brought under federal Defendant Trade Secrets Act); *Cmty. Health Grp. v. Garcia-Ferrer*, No. 05-708, 2005 WL 3190337 at *1 (W.D. Mo. Nov. 28, 2005) (dismissing a counterclaim for attorney's fees under ERISA, but noting defendant was still free to move for attorney's fees at the appropriate time).

In sum, both the plain language of the statute and relevant case law support a reading of the statute that requires a party to bring a request for attorney's fees under Minn. Stat. § 325C.04 as a separate motion at the conclusion of litigation when the Court has determined the prevailing party, rather than as a counterclaim.  Therefore, because the issue of attorney's fees under Minn. Stat. § 325C.04 is not proper as a counterclaim, the Court will grant Schwan's Motion to Dismiss.

### B.      Failure to State a Claim

Even if Conagra's claim under Minn. Stat. § 325C.04 could be properly asserted as a counterclaim, Conagra fails to plausibly plead bad faith.

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party.  *See, e.g., Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  To avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A party asserting bad faith must satisfy both objective and subjective prongs.  *See Norwood Operating Co. v. Beacon Promotions, Inc.*, No. 04-1390, 2006 WL 3103154, at *2

(D. Minn. Oct. 31, 2006). "[B]ad faith exists when the court finds (1) objective speciousness of the plaintiff's claim, and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets." *Id.* (Internal quotations and citations omitted); *accord Alamar Biosciences, Inc. v. Difco Labs., Inc.*, 1996 WL 784495, at *1 (E.D. Cal. February 23, 1996) (collecting cases). Objective speciousness exists where there is a complete lack of evidence supporting the plaintiff's claims. *Norwood*, 2006 WL 3103154 at *2 (internal quotations and citations omitted). Subjective misconduct is judged by the relative degree of speciousness of the plaintiff's trade secrets claim and its conduct during litigation. *Id.*

Here, the first prong, objective speciousness, is clearly lacking. Schwan's has a sworn admission from Cai that he used Schwan's confidential information in the scope of his employment at Conagra. That alone demonstrates evidence to support Schwan's misappropriation claims. *See Norwood,* 2006 WL 3103154, at *2 (finding that the defendant had not established bad faith where the plaintiff had some evidence to support its claims and adopting the two-part test that establishes objective speciousness exists where there is a **complete lack of evidence** supporting the plaintiff's claims).

Further, the subjective misconduct inquiry is in part dependent on conduct during the litigation, but Conagra fails to point to any relevant conduct by Schwan's during the litigation at all, let alone any conduct that would rise to the level of bad faith misconduct. Conagra's conclusory statement that Schwan's brought a meritless trade

misappropriation action is not enough because it does not "plead[] factual content that allows the court to draw the reasonable inference" that Schwan acted in bad faith. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Therefore, even if the claim were properly asserted as a counterclaim, the Court nevertheless finds Conagra has failed to state a claim for relief to obtain attorney's fees under Minn. Stat. § 325C.04 at this time.  That said, if Conagra is determined to be the "prevailing party," it may assert the claim in a motion at the appropriate time, when the Court will have the benefit of a more complete fact-finding record and an account of both parties' conduct during the full extent of litigation.

## CONCLUSION

Because a claim for attorney's fees under Minn. Stat. § 325C.04 is not properly brought as a counterclaim, the Court will grant the Schwan's Motion to Dismiss Conagra's counterclaim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Dismiss [Docket No. 211] is **GRANTED**.

DATED:  January 12, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge