# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Carl Anderson and Tammy Anderson, | Case No. 21-cv-2088 (JMB/LIB) |
| Plaintiffs, | |
| v. | **ORDER** |
| United States of America, | |
| Defendant. | |

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636 and upon Plaintiff's "Motion to Amend the Scheduling Order for Leave to Designate a Replacement Expert," [Docket No. 116], and Defendant's Second Motion to Compel. [Docket No. 125]. At the hearing on September 9, 2024, [Docket No. 156], the Court took the matters under advisement.

For the reasons discussed below, Plaintiff's "Motion to Amend the Scheduling Order for Leave to Designate a Replacement Expert," [Docket No. 116], and Defendant's Second Motion to Compel, [Docket No. 125], are **GRANTED** in part and **DENIED** in part.

I.  BACKGROUND.

In October of 2019, Plaintiff's counsel retained Daniel Tseng, M.D., a board-certified gastrointestinal surgeon, to provide expert testimony. (Woods Decl. [Docket No. 120] ¶ 2).[1] On September 21, 2021, Plaintiffs filed their Complaint along with a declaration of Dr. Tseng supporting their claim for damages. (Compl. Ex. C [Docket No. 1]). The initial Scheduling Order

---

[1] Plaintiffs state in their brief that the purpose of retaining Dr. Tseng was to comply with Minnesota law—Minn. Stat. §145.682—which requires that any allegations of malpractice against a healthcare provider be established with expert testimony.

1

[Docket No. 11] required the parties to disclose their expert reports on or before January 14, 2022. This timeline was later extended in the Amended Scheduling Order to September 30, 2022. [Docket No. 16].

Plaintiffs provided Dr. Tseng's expert report on September 26, 2022. (Woods Decl. Ex. A [Docket No. 120]). It was the principal theory of Dr. Tseng that Plaintiff's left gastric artery was inadvertently cut during his hernia surgery on April 25, 2018, which led to necrosis and further severe complications. (Id. at ¶¶ 45–47). In addition, the Plaintiffs disclosed a supplemental expert report by Dr. Tseng on February 28, 2023, which, in part, further opined on events that occurred while Plaintiff, Mr. Anderson, was transferred to the University of Minnesota Medical Center. (Woods Decl. Ex. B [Docket No. 120]). Dr. Tseng was deposed by the Defendant on November 20, 2023. (Fuller Decl. [Docket No. 127] ¶ 2; Woods Decl. Ex. C [Docket No. 120]).

During the latter course of the litigation, Defendant's counsel learned that Dr. Tseng had been retained in an unrelated lawsuit against the United States. Castillo v. United States, Case No. 2:22-cv-4390-KS (C.D. Cal.). On March 11, 2024, defense counsel assigned to that unrelated case in the Central District of California informed Defendant here that in response to a general records, subpoena served on February 2, 2024, Dr. Tseng had produced a letter dated November 8, 2023, from his employer, Legacy Health, stating that Dr. Tseng had been suspended. (Fuller Decl. [Docket No. 127] ¶ 1). Defendant received a copy of the letter on March 12, 2024. (Id.). On April 24, 2024, Defendant's counsel informed Plaintiffs by email that the letter had come into his possession. (Woods Decl. Ex. D [Docket No. 121]).

The November 8th letter from Dr. Tseng's employer, Legacy Health of Portland, Oregon—which Plaintiffs claim is one of the several hospitals where Dr. Tseng had privileges—explains that Legacy's Medical Executive Committee had "decided to summarily suspend" and

2

recommend complete revocation Dr. Tseng's clinical privileges "effective immediately." (Woods Decl. Ex. D [Docket No. 121]; Plf.s' Memo [Docket No. 119] at 4). The letter further states that this decision was due to serious patient-care findings, which purportedly led to several patient demises as well as a "lengthy history of behavior issues" and an "extensive history" of "prior and ongoing concerns involving [his] professional practice, both at this hospital and at Providence [St. Vincent Hospital]." (Id.). Additionally, the letter describes that a formal investigation by the Medical Executive Committee began on April 25, 2023. (Id.).

Defendant then sought discovery of the facts underlying the November 8th letter from Plaintiff, Legacy Health, and Dr. Tseng. Defendant served interrogatories and requests for production directed to the Plaintiffs (which would later become the subject of Defendant's motion to compel [Docket No. 125]) and served Legacy Health and Dr. Tseng with third-party Rule 45 subpoenas in April and May of 2024. (Woods Decl. Ex. E [Docket No. 121]). On May 24, 2024, Plaintiffs responded that they had no knowledge of the underlying facts concerning Dr. Tseng's suspension outside of what was stated in the November 8th letter. However, Plaintiffs have since discovered that Dr. Tseng retained independent counsel for representation in his employment dispute with Legacy Heath. (Woods Decl. [Docket No. 120] ¶ 6).

On June 6, 2024, Legacy Health responded to the Defendant's subpoena, objecting to providing any information on the grounds that Oregon's peer review statute—O.R.S. § 41.675—precluded any response. (Woods Decl. Ex. F [Docket No. 121]). In addition, on June 17, 2024, Dr. Tseng's counsel sent Defendants a letter objecting on the grounds that the requested documents were subject to state peer review privilege in Oregon and Minnesota. (Woods Decl. Ex. G [Docket No. 120]).

3

In the following weeks, the parties engaged in discussions regarding disputes as to whether the information concerning Dr. Tseng's suspension was privileged under State peer review statutes. (See, e.g., Woods Decl. Ex. K [Docket No. 120]). After failing to come to an accord, Plaintiffs suggested in a July 23 letter to Defendant that it might be most expedient to "substitute[e] in a different expert" to "alleviate the motion practice" regarding the asserted peer review privilege in the subpoenas. (Woods Decl. Ex. L [Docket No. 120]). Defendant objected to the idea of substituting a different expert to try to alleviate further motion practice and further stated that they were entitled to further information regarding Dr. Tseng's qualifications, privileges, and clinical employment history as the federal common law and not state peer review statutes controls. (Woods Decl. Ex. M [Docket No. 120]). In addition, Defendant averred that it would seriously prejudice Defendant if Plaintiffs were allowed to switch liability experts this late in litigation. (Id. at p. 2).

After receiving this response, Plaintiffs reached out to Dr. Tseng, who had retained independent counsel by that time, presumably in relation to his employment dispute. (Woods Decl. [Docket No. 120] ¶ 16). Meanwhile, Defendant informed Dr. Tseng's retained counsel that the government would be filing a motion to compel the week of August 5th unless Dr. Tseng were to comply with the previously sent subpoena duces tecum. (Plf.s' Brief [Docket No. 119]). Defendant subsequently filed a motion to compel a response to the Rule 45 subpoenas against Dr. Tseng in the District of Oregon. (Def.'s Memo. [Docket No. 126] p. 2 fn. 1). The motion was heard by the Honorable Adrienne Nelson on August 30, 2024, and has been taken under advisement. Anderson v. United States, 3:24-MC-813-AN (Dist. Or. Aug. 16, 2024).

Consequently, on August 1, 2024, Dr. Tseng's counsel informed the Plaintiffs that he was withdrawing as Plaintiffs' expert, presumably to moot the anticipated motion to compel subpoena

4

as stated in Dr. Tseng's response in a motion to compel his response filed in District of Oregon. (Woods Decl. [Docket No. 149] at pp. 1–2, 5; Woods Decl. [Docket No. 120] ¶ 16). This withdrawal was further confirmed in an email from Dr. Tseng's counsel to Plaintiffs on August 6, 2024. (Woods Decl. Ex. N [Docket No. 120]).

After being told by Dr. Tseng that he was withdrawing as their medical expert, Plaintiffs emailed Defendant on August 6, 2024, informing the government that any proposed motion to compel discovery would be moot. (Woods Decl. Ex. X [Docket No. 120]). Plaintiffs asserted that Dr. Tseng's withdrawal was entirely unexpected. (Woods Decl. [Docket No. 148] ¶ 2). In addition, Plaintiffs again explained that they had no knowledge surrounding Dr. Tseng's employment disputes with Legacy Health and that the first time they and their counsel learned of this dispute was when Defense counsel here shared a copy of the Legacy Letter with them on April 24, 2024. (Woods Decl. [Docket No. 148] ¶ 2).[2]

Plaintiffs then proposed to Defendant that Plaintiffs filing a motion seeking adjustment of the scheduling order to designate a new expert and that Plaintiffs would commit to "paying the reasonable costs associated with taking the new expert's deposition and will undertake that the new expert, while independent, will not render opinions that are materially different from Dr. Tseng's as to the standard of care and breaches thereof." (Id.). Plaintiffs subsequently filed their motion seeking an adjustment in the scheduling order on August 8, 2024. [Docket No. 116].

The next day on, August 9, 2024, Defendant filed its second motion to compel discovery from Plaintiffs, [Docket No. 125], because Dr. Tseng had "not recanted" his prior opinions. (See

---

[2] It appears that Plaintiffs did, unknowingly disclose that Dr. Tseng no longer worked at Legacy Heath when, on November 30, 2023, Plaintiff's counsel forwarded Dr. Tseng's updated CV to Defendant's counsel. (Woods Decl. Ex. C [Docket No. 148]; Plf.s' Memo. [Docket No. 14] at p. 5). Dr. Tseng's updated CV, which was provided on November 30th, no longer listed Legacy Health under the heading "Privileges." (Id.). Plaintiffs state that they were not then aware of Dr. Tseng's employment dispute with Legacy Health, and they have, in the meantime, provided Defendant with everything that they know about the issue.

Def.'s Memo. [Docket No. 126] at 1). Defendant's second motion to compel concerns interrogatories and requests for production and admissions as to what the Plaintiffs know concerning the professional investigation into Dr. Tseng, including the circumstances that led to the suspension of Dr. Tseng's privileges. Specifically, Defendant seeks responses to: (1) Defendant's Interrogatories (Third Set) Nos. 23–24[3], 25–26, and 28 (Fuller Decl. Ex. B [Docket No. 128]); (2) Defendant's Request for Production of Documents (Third Set) Nos. 41[4], 42, 44, and 46 (Fuller Decl. Ex. C [Docket No. 128]); and (3) Defendant's Requests for Admissions Nos. 11–17. (Fuller Decl. Ex. H [Docket No. 128]).

On August 30, 2024, Plaintiffs filed their response in opposition to Defendant's motion to compel. [Docket No. 147].

## II. PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER. [DOCKET NO. 116].

Plaintiffs seek an Order from this Court for leave to amend the current scheduling order to designate a replacement liability expert, in accordance with Rules 16 and 26 of the Federal Rules of Civil Procedure. (Plf.s' Memo. [Docket No. 119]). For the reasons discussed below, the Court finds that Plaintiffs have demonstrated good cause to do so provided certain conditions are met to reduce prejudice to Defendant.

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b), a party who moves to modify a scheduling order must demonstrate good cause to do so. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."

---

[3] Narrowed to only if the underlying cases involve a hiatal hernia repair.
[4] Narrowed to only subparagraphs a-c (further narrowed to only if the underlying cases involve a hiatal hernia repair), d, f, g, and j–n.

Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716–17 (8th Cir. 2008) (citing Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006)); see also Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Id. (citing Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)). "Obedience to the constraints of the Court's Scheduling Orders is critical if the Court is to capably perform its case management responsibilities." Damgaard v. Avera Health, No. 13-cv-2192 (RHK/JSM), 2015 U.S. Dist. LEXIS 46997, 2015 WL 1608209, at *7 (D. Minn. Apr. 10, 2015) (quoting Tomlin v. Holecek, 158 F.R.D. 132, 135 (D. Minn. 1994)).

**B. Analysis**

While it is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings and add additional parties, the Federal Rules set a less forgiving standard regarding case management orders. Federal Rule of Civil Procedure 16(b) specifies that deadlines set by scheduling orders may be modified for a good cause with the Court's leave. Fed. R. Civ. P. 16(b)(4). The 1983 Advisory Committee Notes state that "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amend.[5] As a result, a moving party must first make the requisite showing, and even then, the Court retains the discretion whether or not to grant the motion. Banford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).

---

[5] Further, Local Rule 16.3(b) requires that a party who requests modification of scheduling order establish good cause, as well as explain the modification's effect on deadlines, and if discovery deadlines will be moved, the modification's effect on discovery should the motion be granted. See D. Minn. LR 16.3(b).

The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); see also Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008); Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (requiring that a party moving to modify a scheduling order make a showing of good cause under Federal Rule of Civil Procedure 16(b)). However, the Court can also consider "the existence or degree of prejudice to the party opposing the modification." Id. Courts are "afforded broad discretion in establishing and enforcing deadlines and in maintaining compliance with discovery[.]" Id. at 607 (quoting In re Baycol Prods. Litig., 596 F.3d 884, 888 (8th Cir. 2010)).

Courts have looked to four factors in deciding whether to allow a party to designate a new expert after an expert disclosure deadline has expired: 1) the explanation for the failure to identify the witness earlier; 2) the importance of the testimony; 3) potential prejudice in allowing the testimony; and 4) the availability of a continuance to cure such prejudice. Betzel v. State Farm Lloyds, 480 F.3d 704, 707 (5th Cir. 2007).[6]

For example, in Vincent v. Omniflight Helicopters Inc., No. 08-C-0572, 2009 U.S. Dist. LEXIS 117966 (E.D. Wis. Nov. 24, 2009), a wrongful death case arising out of an aircraft crash, the plaintiff retained multiple experts to testify about certification procedures at the Federal Aviation Administration ("FAA"). Id. at **1–2. However, an expert withdrew himself after a six-hour deposition where the defendant's attorney undermined his credibility by pointing out a series of falsehoods in the expert's résumé. Id. at **2–4. After considering the four factors discussed by the Fifth Circuit in Betzel, the judge concluded that the plaintiff's motion should be

---

[6] The fourth factor under Betzel is less relevant here considering the conditions that the Court will impose to reduce potential prejudice.

8

allowed, conditioned on the plaintiff reimbursing the defendants for the expense of preparing for and conducting a new examination of the replaced expert. Id. at **7–13.

In another example, Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V., No. 03-1064 (DWF/RLE), 2006 U.S. Dist. LEXIS 93833, 2006 WL 3836137 (D. Minn. Dec. 22, 2006), held a plaintiff's expert was unable to continue in the litigation, and the court found that the defendant would not be prejudiced when the substitute expert's "adopted the essence of" the prior expert's opinion. Id. at *9. This same principle was echoed in Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co., No. 1:04-CV-396, 2010 U.S. Dist. LEXIS 103744, *6 (N.D. Ind. Sep. 30, 2010), which, like the prior cited cases, allowed for substitute experts and required that the expert's testimony be limited by the scope of the testimony from the previous expert. Id.

Based upon the four factors under Betzel, the Court concludes that good cause under Rule 16 does exist for modifying the current scheduling order to permit Plaintiffs to designate a substitute expert. Betzel, 480 F.3d 704, at 707.

First, the Court notes that the Plaintiffs themselves bear no blame for Dr. Tseng's unilateral withdrawal. Indeed, this Court notes similarities between the present situation and in Vincent, where in both cases, the expert withdrew of his own volition due to his own, personal professional concerns. Vincent, No. 08-C-0572, 2009 U.S. Dist. LEXIS 117966, at **2–4 (where expert withdrew on his own volition after several falsehoods in his résumé were exposed by the opposing attorney). There is no indication that Plaintiffs' fired Dr. Tseng as an attempt to swap out their experts to gain a better expert. See e.g., Leibel v. NCL (Bahamas) Ltd., 185 F.Supp.3d 1354, 1355, 1358 (S.D. Fla. 2016) (denying a request to swap out "Plaintiff's only designated medical expert" who "was not a viable medical expert"); Crandall v. Hartford Cas. Ins. Co., 2012 WL 6086598, at *3 (D. Idaho Dec. 6, 2012) (denying substitution when plaintiff became

9

dissatisfied with their expert in a case of "buyer's remorse"). Plaintiffs had no direct knowledge of the dispute between Dr. Tseng and his employer until Defense counsel provided Plaintiffs with a copy of Legacy Health's November 8, 2023, termination of Dr. Tseng's privileges letter on April 24, 2024. (Woods Decl. [Docket No. 148] ¶ 2).

Second, the Court finds that Dr. Tseng, as Plaintiffs' sole medical expert testifying to such topics as the standard of care and causation concerning Mr. Anderson's injuries, played a critical and necessary role in Plaintiffs' case. (See Woods Decl. Ex. A [Docket No. 120] (Dr. Tseng's initial report); Woods Decl. Ex. B [Docket No. 120] (Dr. Tseng's supplemental report)). Accordingly, the need to replace Dr. Tseng is high as his testimony bears on important issues that are not covered by any other identified experts. Cf. Vincent, No. 08-C-0572, 2009 U.S. Dist. LEXIS 117966, at **9–10. Indeed, if Dr. Tseng is not replaced, Plaintiffs will not be able to offer any admissible testimony on the issues discussed in Dr. Tseng's reports. As such, the second Betzel factor supports allowing the designation of a new expert. Betzel, 480 F.3d 704, at 707.

Third, provided the Court imposes several conditions on Plaintiffs, the Court finds that the designation of a new expert will only minimally prejudice Defendant. As discussed above, Courts are given broad authority to impose a variety of restrictions on substitute experts to mitigate any resulting prejudice against the opposing party. For example, some possible restrictions imposed have included: (1) not permitting the new expert to "testify in any manner that is contrary to or inconsistent with" the prior expert; (2) allowing the other party to depose the new expert for up to two days, with the substituting party to pay "travel costs (if any), and the attorney fees incurred preparing for and taking" the new expert's deposition; and (3) providing that the prior expert's "deposition testimony may be used for impeachment purposes at trial" of

10

the new substitute expert. Cardiac Sci., No. 03-1064 (DWF/RLE), 2006 U.S. Dist. LEXIS 93833, at **10–11.

This Court will impose several conditions on Plaintiffs to reduce prejudice against Defendant and to bring the parties back near to the status quo before Dr. Tseng unilaterally withdrew himself. First and foremost, the Court emphasizes and cautions Plaintiffs that this is not an opportunity to expand theories of liability. See Adams v. Cooper Indus., Inc., No. 03-476, 2007 U.S. Dist. LEXIS 99057, at *8 (E.D. Ky. Apr. 5, 2007) ("This substitution was intended to put the plaintiffs in as good a position as they would have held had [the prior expert] performed his job as expected; it was not intended to allow the plaintiffs to designate a superior . . . expert after the deadline for expert disclosures."). However, the opinions of any substitute expert must be independent based on his or her review of the source materials alone. See Morel v. Daimler-Chrysler Corp., 259 F.R.D. 17, 22 (D.P.R. 2009).[7]

To maintain the status quo, the Court imposes the condition that any opinions of any substitute expert cannot expand the case past the scope of the opinions described by Dr. Tseng. See Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co., No. 1:04-CV-396, 2010 U.S. Dist. LEXIS 103744, at **7–8 (N.D. Ind. Sep. 30, 2010) (collecting cases regarding replacement experts, and noting that the general practice is to allow replacement but condition it on the new expert's opinions being limited to the "same subject matter without meaningful changes.").[8]

---

[7] Plaintiff's substitute expert cannot rely on or incorporate by reference any of Dr. Tseng's opinions. Nor may Plaintiff's substitute expert rely on Defendant's rebuttal expert reports when drafting his opinion. Furthermore, the substitute expert may not have in his possession any prior expert report from this case when drafting his independent opinion. In addition, henceforth, Dr. Tseng's reports shall be unavailable for use by Plaintiffs without leave of court by formal motion. For example, Plaintiffs cannot use Dr. Tseng's report in their case-in-chief or reply for any purpose absent leave of court.

[8] In this Court's view, the term 'scope' used by Courts to describe the limitations of a substitute expert's opinion is a term of art that has several important criteria. Most importantly, the substitute expert, as an independent expert, must form an independent opinion. This means that precautions must be taken to ensure that the substitute expert conducts an independent review of the source materials without consulting the opinions of the previous expert or rebuttal opinions of the opposing experts. As a result, due to inherent differences between experts, the wording and

11

However, imposing restrictions to prevent Plaintiffs from 'retooling' their case is only one of the many tools this Court has at its disposal to reduce prejudice to the opposing party.

Second, the Court also recognizes that fairness mandates that Defendant have the opportunity to depose the substitute expert at the location Defendant chooses. Cardiac Sci., No. 03-1064 (DWF/RLE), 2006 U.S. Dist. LEXIS 93833, at *12 (imposing such condition on the party seeking substitute expert).[9] Plaintiffs shall pay for the court reporter fees incurred during the deposition, travel costs (if any) of their substitute expert, and the opposing Attorney's fees for the deposition, excluding any fees incurred in preparing for and taking the new deposition. (See Id.).

In addition, the Court also recognizes that Defendant will also likely need their own experts to review the substitute expert's opinion and provide a written critique. In such situations, Courts have cured potential prejudice by providing that the party seeking the substitute expert reimburse the opposing party for a reasonable amount of such expense. See Vincent, No. 08-C-0572, 2009 U.S. Dist. LEXIS 117966, at **11–12 (citing Sithon Maritime Co. v. Holiday Mansion, No. Civ.A 96-2262-EEO, 1998 U.S. Dist. LEXIS 11822, 1998 WL 433931, at *1 (D. Kan. July 30, 1998)). Defendant has invested considerable work on this case to date and has paid its expert, Dr. Jeffery Freidman a total of $35,250.00. (Fuller Decl. [Docket No. 151] at ¶ 2). However, Defendant has not provided the Court with an exact breakdown of costs incurred for

---

opinions of the substitute expert will almost certainly differ slightly from the previous expert. In the context of permitting a party to substitute an expert, fairness does not mandate that the new expert's opinion be identical. However, fairness does require that the new opinion be within the same scope as the previous opinion. This means that the substitute expert is to write about the same topics as the previous expert. For instance, in a tort dispute, if the original expert opined on the topics of duty, breach, and causation, then the substitute expert should be asked to give his or her own opinion regarding duty breach and causation. Obviously, the conclusion from the substitute expert may differ from the original expert. For instance, one expert's theory of causation may differ from another's. However, even in such cases, the scope will not have been expanded, provided that each expert opines only on the same underlying topics. Plaintiffs' substitute expert may not, however, offer any entirely new theories of breach of duty or causation beyond those previously offered by Dr. Tseng.

[9] Should the Defendant choose to depose Plaintiffs' substitute expert, the presumptive duration limitation of one day of seven hours for any deposition, Fed. R. Civ. P. 30, Advisory Committee Note (2000 Amendment), may be extended up to. 10.5 hours of examination over the course of two (2) days.

forming his prior rebuttal opinion regarding only Dr. Tseng's opinions. Dr. Friedman has opined not just on the opinions of Dr. Tseng but on several other aspects of the case as well. As such, the Court will assume 25% percent of Dr. Freidman's costs have been in rebuttal of Dr. Tseng's opinions. Accordingly, the Court orders Plaintiffs to pay a total of $8,812.50 as reimbursement to Defendant.

### C. Conclusion

With all these conditions in place, the Court finds that any prejudice to Defendant will be minimized. As a result, good cause exists to amend the current scheduling order to allow for the designation of a substitute expert by Defendants.

Counsel for both parties are directed to meet and confer with one another and submit a joint stipulation for a proposed modification of the scheduling order limited to accommodating discovery related to the late naming of the expert and consequential delays in motion practice deadlines.

### III.  DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY. [DOCKET NO. 125].

Defendant seeks an Order from this Court compelling Plaintiffs to provide discovery relating to Dr. Tseng's employment dispute with Legacy Health. (Def.'s Memo. [Docket No. 126] at 4). In addition, Defendant seeks an Order from the Court finding good cause for Defendant to re-depose Dr. Tseng pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii) (requiring leave of court before deposing a witness more than once). (Id. at 13–14).

### A. Standard of Review

The "Court possesses considerable discretion in determining the need for, and form of, discovery . . . ." Willis Elec. Co. v. Polygroup Trading, Ltd., No. 15-cv-3443 (WMW/KMM), 2021 U.S. Dist. LEXIS 27974, 2021 WL 568454, at *9 (D. Minn. Feb. 16, 2021) (ellipses in Willis) (quoting Rodriguez v. Riley, No. 19-cv-2707 (JRT/ECW), 2020 U.S. Dist. LEXIS 147912, 2020 WL 4747610, at *2 (D. Minn. Aug. 17, 2020)). In discovery matters, the Court is guided by Federal Rule of Civil Procedure 26(b)(1) which states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Courts generally have construed Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978); see also Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). Likewise, "[p]ursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." Keefe v. City of Minneapolis, No. 09-cv-2941 (DSD/SER), 2012 U.S. Dist. LEXIS 187017, 2012 WL 7766299, at *3 (D. Minn. May 25, 2012) (citing Fed. R. Civ. P. 26(b)(1) (defining scope of discovery). However, the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation. See, e.g., Sierrapine v. Refiner Prods. Mfg., Inc., 275 F.R.D. 604, 609 (E.D. Cal. 2011).

### B. Analysis

Defendant seeks discovery relating to information concerning Dr. Tseng's current status at Legacy Health, including whether he has permanently lost clinical privileges as a result of the

14

investigations and disciplinary proceedings referenced in the November 8, 2023, termination of privileges letter. Plaintiffs were not directly aware of the developments relating to Dr. Tseng's employment dispute and loss of clinical privileges prior to April 2024. Specifically, Plaintiffs have stated in their responses to Defendant's discovery requests that they do not have "firsthand knowledge" regarding the dispute outside of the facts contained in the November 8th letter that was given to them by Defendant's counsel. (Fuller Decl. Ex. D [Docket No. 127] (letter from Plaintiffs' counsel); Fuller Decl. Ex. E [Docket No. 128] (Plaintiffs' Interrogatory Responses).

As a threshold matter, because the Plaintiffs have not informed the Court that they have disclaimed all reliance on Dr. Tseng's opinion, the Court finds that information relating to Dr. Tseng's status at Legacy Health is relevant under Federal Rule of Civil Procedure 26(b)(1).[10] Evidence regarding Dr. Tseng's skills, qualifications, and credentials is central to his qualifications and credibility as an expert if portions of his opinions are to be used at trial with prior approval of the Court. However, despite being relevant, Plaintiffs "cannot be compelled to produce what they do not possess." Taco John's Int'l, Inc. v. Taco Chon Mexican Grill LLC, No. 22-cv-1050 (JRT/LIB), 2023 U.S. Dist. LEXIS 198251, at *10 (D. Minn. Mar. 7, 2023) (collecting cases).

While Defendant argues that Plaintiffs were required to continuously investigate their own expert witness's employment record to keep abreast of changes to his qualifications, Federal Rule of Civil Procedure 26(a)(2)(A) only requires litigants to make disclosures to qualifications "to shorten or decrease the need for expert depositions and thus . . . conserve resources." R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 271 (6th Cir. 2010). There is no requirement that a party conduct a continuous ongoing exhaustive investigation on their

---

[10] However, as explained above, as a condition of permitting Plaintiffs to retain a substitute expert, Plaintiffs are not permitted to use any of Dr. Tseng's opinion in their case-in-chief or in reply without leave of Court.

own medical expert to ensure hospital privileges had not been lost in the interim. Moreover, both sides had access to Dr. Tseng's updated CV which he sent to Plaintiffs in November 2023, which had removed Legacy Health from a hospital where Dr. Tseng had privileges, and neither Plaintiffs nor Defendants found this change to be suspicious until both parties later received a copy of the Legacy Health November 8th termination of privileges letter in the spring of 2024. (Woods. Decl. Ex. C [Docket No. 148]). In the Court's review of the record, the only deception regarding Dr. Tseng's employment status appears to have originated from Dr. Tseng himself.

However, insofar as Plaintiffs do possess any responsive information concerning Defendant's requested discovery concerning the circumstances of Legacy Health's termination of Dr. Tseng, Plaintiffs are required to provide such responsive information. Plaintiffs argue that both Legacy Health and Dr. Tseng have asserted that the matter is subject to the peer review privilege and, therefore, is not discoverable. (Woods Decl. Ex. A [Docket No. 148]). Plaintiffs have also taken the position that some of the information is subject to Minnesota state peer review. Currently, these issues of state peer review privilege as they pertain to Legacy Health and Dr. Tseng are under advisement in the District of Oregon.[11] However, resolving such issues with respect to Legacy Health or Dr. Tseng is not necessary here. Regardless of whether such pendent state privilege claims apply to the present Federal Tort Claims Act medical malpractice case, any privilege would have been waived by disclosing it to the Plaintiffs. Elkharwily v. Mayo Holding Co., No. 12-3062 (DSD/JJK), 2014 U.S. Dist. LEXIS 195684 (D. Minn. June 2, 2014) ("The Court concludes that even if the peer review privilege did apply . . . then Defendants have waived the privilege by its partial disclosure.").

---

[11] As noted above, Defendant has moved in the District of Oregon to enforce its document subpoena against Dr. Tseng and Legacy Health.

16

Accordingly, Plaintiffs are required to provide Defendant supplemental responses consistent with the Court's findings above. Specifically, Plaintiffs are required to update their responses to Defendant's Interrogatories (Third Set) Nos. 23–26, and 28 as requested by Defendant. Plaintiffs are also required to supplement their production of Defendant's Requests for Productions of Documents (Third Set) Nos. 41, 42, 44, and 46 as requested by Defendant. Finally, Plaintiffs must provide updated responses to the entirety of Defendant's Request for Admissions (Second Set).

As for Defendant's request for leave of court to depose Dr. Tseng for a second time under Rule 30(a)(2)(A)(ii), the Court denies that request at this time without prejudice. The Defendant may move again seeking such relief if it believes it can show good cause and relevant discoverable information necessarily exists after the District of Oregon rules on Defendant's motion to compel responses by Dr. Tseng and Legacy Heath to the Rule 45 Subpoena Duces Tecum served by Defendant on Dr. Tseng and Legacy Health.

### IV. CONCLUSION.

Therefore, for the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' "Motion to Amend Scheduling Order for Leave to Designate a Replacement Expert," [Docket No. 116], is **GRANTED** in part and **DENIED** as set forth above;

2. Parties shall meet and confer and submit a joint stipulation within fourteen (14) days for a proposed modification of the scheduling order to accommodate the late naming of the Plaintiffs' substitute expert;

3. Defendant's "Second Motion to Compel," [Docket No. 125], is **GRANTED** in part and **DENIED** in part as set forth above; and

4. Plaintiffs shall serve upon Defendant their supplemental discovery responses regarding Dr. Tseng within fourteen (14) days of this Order.

Date: October 8, 2024                             s/ Leo I. Brisbois
                                                  Hon. Leo I. Brisbois
                                                  U.S. MAGISTRATE JUDGE