**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **SCHWAN'S COMPANY** and **SCHWAN'S SHARED SERVICES, LLC,** | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **RONGXUAN CAI** and **CONAGRA BRANDS, INC.,** | ) ) |
| | ) |
| Defendants. | ) |

Case No. 0:20-cv-2157 (JRT/DTS)

**MEMORANDUM IN OPPOSITION TO CONAGRA'S MOTION TO BAR AND EXCLUDE OPINIONS AND TESTIMONY OF SEAN LANTERMAN**

**TABLE OF CONTENTS**

I.      Introduction ................................................................................................. 1

II.     Relevant Background ................................................................................... 1

    A.      The record confirms Lanterman's extensive experience auditing, reviewing, and setting up cybersecurity policies for corporate entities. ....... 1

    B.      Lanterman independently developed the proffered opinions; no additional analysis was required after Lanterman was substituted as Schwan's expert. ................................................................................... 3

        1.      The circumstances of Schwan's expert substitution ......................... 3

        2.      Lanterman's independent development of his opinions ..................... 4

III.    Legal Standard ............................................................................................ 5

IV.     Argument ..................................................................................................... 7

    A.      Lanterman is qualified to offer opinions on the reasonableness of Schwan's efforts to protect its confidential information. ............................. 7

        1.      Lanterman is qualified; Conagra's motion improperly relies on a mischaracterization of the record to suggest otherwise. ................. 7

        2.      Lanterman's professional experience is sufficient qualification; Conagra mischaracterizes the qualification requirements under Rule 702. ............................................................................. 9

            a)      Formal education is not required under Rule 702; experience alone is sufficient. ................................................ 9

            b)      Conagra's case law is distinguishable. ................................ 11

        3.      Lanterman applied reliable methodology in developing his opinion that Schwan's took reasonable steps to protect its confidential information. ................................................................. 14

    B.      Lanterman independently developed his proffered opinions; he did not inherit or adopt them from any other expert. ............................... 17

        1.      Conagra mischaracterizes Lanterman's development of his opinions; the record is clear he independently developed them. ................................................................................... 17

i

2.     Conagra's cases are inapposite because Lanterman's opinions do not rely on opinions of non-testifying experts. ........................... 18

V.     Conclusion ................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Techtronic Indus. N. Am., Inc.*,
  6:13–cv–1571–Orl–41TBS, 2015 WL 12843836 (M.D. Fla. Apr. 14,
  2015) .................................................................................................... 13, 14

*Circle J Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.*,
  790 F.2d 694 (8th Cir. 1986) ................................................................ 7, 10

*Clayton Int'l, Inc. v. Nebraska Armes Aviation, LLC*,
  No. 8:21CV309, 2025 WL 1937621 (D. Neb. July 15, 2025) .................................... 19

*Crabar/GBF, Inc. v. Wright*,
  142 F.4th 576 (8th Cir. 2025) ...................................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................ 5, 6, 9

*Fair Isaac Corp. v. Fed. Ins. Co.*,
  447 F. Supp. 3d 857 (D. Minn. 2020) ............................................................... 6

*First Union Nat'l Bank v. Benham*,
  423 F.3d 855 (8th Cir. 2005) ................................................................... 10, 11

*Fox v. Dannenberg*,
  906 F.2d 1253 (8th Cir. 1990) ........................................................... 6, 7, 9, 10

*Goines v. Lee Mem'l Health Sys.*,
  No. 217-CV-656-FTM-29UAM, 2019 WL 8334614 (M.D. Fla. Feb. 28,
  2019) ............................................................................................................. 13

*Hale County A & M Transp., LLC v. City of Kansas City, Mo.*,
  998 F. Supp. 2d 838 (W.D. Mo. 2014) ........................................................ 12

*Hirchak v. W.W. Grainger, Inc.*,
  980 F.3d 605 (8th Cir. 2020) ................................................................ 11, 12

*Housley v. Orteck Int'l, Inc.*,
  488 F. Supp. 2d 819 (S.D. Iowa 2007) ...................................................... 12, 13

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................ 5

*Maki v. Fed. Rsrv. Bank of Minneapolis*,
  784 F. Supp. 3d 1191 (D. Minn. 2025)..................................................................... 12

*McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.*,
  No. 18-1380, 2023 WL 6222427 (E.D. La. Sept. 25, 2023)........................................ 14

*Oxygenator Water Techs., Inc. v. Tennant Co.*,
  No. 20-cv-00358, 2024 WL 4024901 (D. Minn. Apr. 8, 2024) .................................... 5

*In re ResCap Liquidating Tr. Litig.*,
  432 F. Supp. 3d 902 (D. Minn. 2020)........................................................................ 19

*Speed RMG Partners, LLC v. Arctic Cat Inc.*,
  No. 20-CV-609, 2024 WL 4543340 (D. Minn. Oct. 17, 2024) ........................... 6, 9, 10

*Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*,
  691 F. Supp. 3d 940 (D. Minn. 2023)........................................................................ 16

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*,
  557 F. Supp. 2d 1040 (W.D. Mo. 2008) ..................................................................... 12

*United States v. Withorn*,
  204 F.3d 790 (8th Cir. 2000) ...................................................................................... 9

*Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*,
  No. 16-556 (JRT/HB), 2019 WL 13235411 (D. Minn. Mar. 22, 2019) ................ 15, 16

*US Salt, Inc. v. Broken Arrow, Inc.*,
  563 F.3d 687 (8th Cir. 2009) ..................................................................................... 19

**Other Authorities**

Fed. R. Evid. 702 ..................................................................................................*passim*

Fed. R. Evid. 702 advisory committee's note to 2000 amendment.......................... 6, 9, 10

Local Rule 72.2............................................................................................................ 4

## I.   Introduction

Plaintiffs Schwan's Company and Schwan's Shared Services, LLC (collectively, "Schwan's") respectfully oppose Defendant Conagra Brands, Inc.'s ("Conagra") Motion to Bar and Exclude Opinions and Testimony of Sean Lanterman ("Lanterman")[1] (Dkt. 749, 751). The motion should be denied for three reasons. First, the unambiguous record—including Lanterman's Report, CV, and deposition testimony—confirms that Lanterman possesses sufficient experience to qualify as an expert under Federal Rule of Evidence 702. Second, the record establishes that Lanterman independently developed each of his proffered opinions and did not improperly rely on or incorporate by reference the opinions of any non-testifying expert. Third, Conagra's cited case law is inapposite and does not support exclusion. Conagra's motion ignores and mischaracterizes the record and the governing law, and it should be denied.

## II.   Relevant Background

### A.   The record confirms Lanterman's extensive experience auditing, reviewing, and setting up cybersecurity policies for corporate entities.

Lanterman is the Director of Incident Response at Computer Forensic Services ("CFS"). (Dkt. 751-03 at 3, 24.) Since joining CFS in 2010, Lanterman has "personally been involved in over 2,000 matters involving digital evidence." (*Id.* at 4.) Lanterman "regularly oversee[s] or assist[s] with cybersecurity incident response engagements and audits on behalf of [CFS] clients. [These c]ybersecurity audits and assessments proactively

---

[1] Any references herein to Mark Lanterman will identify him by his full name. All references to "Lanterman" alone refer to Sean Lanterman.

1

address vulnerabilities, technical controls (hacking countermeasures), and policies/practices to assist clients in preventing cyberattacks in the first instance." (*Id.* at 4, 24.) Lanterman has worked on 200-300 data breaches and 500-600 trade-secret-related or employment matters. (Dkt. 751-05 at 19 (69:7-17), 20 (70:20-71:2).) Lanterman's experience includes significant overlap between digital forensics and cybersecurity such that the principles addressed in Lanterman's formal training related to digital forensics also relate to cybersecurity. (*Id.* at 22 (79:16-24).)

Lanterman also regularly assists corporate clients "with various audit-related tasks, including things like policy reviews, technical control audits, as well as the evaluation of the security of specific systems and use cases." (*Id.* (80:19-81:1).) Lanterman estimates that he has conducted 5-15 cybersecurity audits a year since 2015 or 2016. (*Id.* at 23 (82:17-83:6).) As part of these audits and risk assessments, Lanterman "frequently" refers to the National Institute of Standards and Technology Cybersecurity Framework (the "NIST CSF").[2] (*Id.* at 22 (81:15-20).) Lanterman also consults industry-specific documents and other information when advising his clients. (*Id.* at 22-23 (81:21-82:11).)

---

[2] The National Institute of Standards and Technology (NIST) provides recommendations for best practices related to cybersecurity published in, among other documents, its Cybersecurity Framework (CSF). (Dkt. 751-03 at 13.) The NIST CSF is designed to provide guidance to organizations for managing cybersecurity and mitigating risks posed to an organization's electronic information. (*Id.*)

**B.    Lanterman independently developed the proffered opinions; no additional analysis was required after Lanterman was substituted as Schwan's expert.**

**1.    The circumstances of Schwan's expert substitution**

Schwan's engaged CFS to, among other things, perform computer forensic analyses and provide an expert witness to testify to these analyses and to the reasonableness of Schwan's data security measures. (Dkt. 554 (Declaration of Rachel Zimmerman Scobie in Support of Plaintiffs' Motion to Amend the Scheduling Order to Permit Substitution of Their Computer Forensic Expert), ¶ 3.) At the deadlines set by the Court, Schwan's identified Mark Lanterman from CFS as the individual from CFS that it expected to testify on its behalf and timely provided a written report from CFS, signed by Mark Lanterman, laying out the opinions and the factual bases for those opinions. (*Id.* ¶ 4; *see also* Dkt. 751-01.) A reply report from CFS, signed by Mark Lanterman, was subsequently served on February 14, 2025. (Dkt. 554, ¶ 4; *see also* Dkt. 751-02.) In late March 2025, Schwan's learned that Mark Lanterman was leaving CFS and would no longer be available to serve as a testifying expert in this matter. (Dkt. 554, ¶ 6.) Shortly thereafter, Schwan's notified Conagra and sought Conagra's consent for Schwan's to take the unremarkable course of substituting in another CFS expert, Sean Lanterman, as its testifying expert. Conagra refused.

After a hearing (Dkt. 548; Dkt. 550) and subsequent briefing (Dkt. 553; Dkt. 559), the Court granted Schwan's motion to substitute (Dkt. 564). The Court found "Schwan's engaged CFS, not Mark Lanterman . . . mak[ing] it particularly appropriate for another CFS expert, Sean Lanterman, to take Mark Lanterman's place." (*Id.* at 5.) Next, the Court

found "Sean Lanterman is plainly not an unaffiliated third party acting as a mouthpiece for another expert's opinions." (*Id.* at 6.) "[A]llowing Sean Lanterman to adopt CFS's original report [] minimize[d] prejudice to Conagra . . . [by] both prevent[ing] Schwan's from improperly strengthening its expert report and avoid[ing] the need to restart expert discovery." (*Id.*) Conagra did not object to the Magistrate Judge's Order within the time provided by Local Rule 72.2 of the District of Minnesota Local Rules. Pursuant to the Court's directive (Dkt. 550, 24:11-13), Schwan's served the Opening Report and Reply Report of Lanterman on Conagra on April 9, 2025. (*See* Dkt. 751-03; Dkt. 751-04 (collectively, "Reports").)

### 2. <u>Lanterman's independent development of his opinions</u>

Lanterman was employed by CFS for the entirety of Schwan's engagement of CFS in this matter. (*Compare* Dkt. 751-03 at 4, 24 (Lanterman began working at CFS in 2010) *with* Dkt. 1 (October 13, 2020 filing date).) Even before the substitution, Lanterman worked extensively on the Schwan's matter, logging over 150 hours between September 2021 and February 2025. (*See* Declaration of Joseph Dubis ("Dubis Decl."), Exhibit 1.) Lanterman's work and analysis related to his Reports were conducted independently from and in parallel to the work conducted by Mark Lanterman. (Dkt. 751-05 at 7 (18:6-12), 8-9 (25:21-26:15), 10 (30:1-31:4), 18 (64:9-21).) Lanterman testified that he conducted all of the substantive work reflected in his Reports. (*Id.* at 7 (20:16-21:1).) He further testified that he personally reviewed all of the documents cited in his Reports. (*Id.* at 12 (38:17-39:4).)

4

Because Lanterman conducted the analyses set forth in the Opening Report (Dkt. 751-03) prior to submission of the September 2024 opening report signed by Mark Lanterman (Dkt. 751-01), Lanterman did not need to conduct any additional or new analyses to issue his Opening Report after being substituted as Schwan's testifying expert. (Dkt. 751-05 at 11 (34:6-17, 35:12-21, 36:6-15).) The same was true for Lanterman's Reply Report. (*Id.* at 18 (63:22-64:7).)

## III.    Legal Standard

The admissibility of expert testimony is governed by Rule 702 and *Daubert*. *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-cv-00358 (KMM/DJF), 2024 WL 4024901, at *4 (D. Minn. Apr. 8, 2024). Under Rule 702, the proponent of expert testimony must establish by a preponderance of the evidence that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (explaining that "the Rule 702 inquiry [is] 'a flexible one'" that must be applied in view of the specific facts of the case at hand) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).

As part of its gate keeping role, the Court assesses "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. However, a court "must be cautious not to overstep [its] gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another because those tasks are solely reserved for the fact finder." *Oxygenator Water Techs.*, 2024 WL 4024901, at *5 (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 869 (D. Minn. 2020) (quoting *Daubert*, 509 U.S. at 596); *see also Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 587-88 (8th Cir. 2025) (explaining that Rule 702 and *Daubert* favor admissibility over exclusion).

"[A]n individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990). "Nothing in [the 2000] amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 advisory committee's note to 2000 amend.; *see also Speed RMG Partners, LLC v. Arctic Cat Inc.*, No. 20-CV-609 (NEB/LIB), 2024 WL 4543340, at *14 (D. Minn.

6

Oct. 17, 2024) (quoting advisory committee's note to 2000 amendment to Fed. R. Evid. 702). "It is important also to note that Rule 702 'does not rank academic training over demonstrated practical experience. . . .'" *Fox*, 906 F.2d at 1256 (quoting *Circle J Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.*, 790 F.2d 694, 700 (8th Cir. 1986)).

## IV.     Argument

### A.     Lanterman is qualified to offer opinions on the reasonableness of Schwan's efforts to protect its confidential information.

#### 1.     Lanterman is qualified; Conagra's motion improperly relies on a mischaracterization of the record to suggest otherwise.

Lanterman is qualified under Rule 702 to offer opinions on the reasonableness of Schwan's efforts to protect its confidential information, including its trade secrets. Lanterman has over 10 years of experience performing cybersecurity audits. (*See* Dkt. 751-05 at 23 (82:17-83:6).) This work includes "policy reviews, technical control audits, as well as the evaluation of the security of specific systems and use cases" for corporate entities. (*Id.* at 22 (80:15-81:1).) During that time, Lanterman testified he conducted between 5-15 cybersecurity audits a year. (*Id.* at 23 (82:17-83:6).) In conducting his work, Lanterman "frequently" refers to the NIST CSF (*id.* at 22 (81:15-20)) as well as other industry-specific documents and information (*id.* at 22-23 (81:21-82:11)). Lanterman's decade of real-world, on-the-job experience is the sort of experience expressly contemplated by Rule 702's qualification requirement. Fed. R. Evid. 702 (authorizing expert opinions to be offered by "[a] witness who is qualified as an expert by knowledge, skill, ***experience***, training, or education . . . .") (emphasis added); *see also Fox*, 906 F.2d at 1256-57.

7

In arguing that Lanterman "lacks the training, education, certifications, and experience necessary to assess enterprise security programs or alignment with frameworks" (Dkt. 751 at 4), Conagra ignores and mischaracterizes the record with respect to Lanterman's qualifications. For example, Conagra ignores the portions of Lanterman's Opening Report (Dkt. 751-03 at 3-4), CV (*id.* at 24), and testimony (Dkt. 751-05 at 22-23 (80:15-83:6)) where he discusses his extensive experience auditing, reviewing, and setting up cybersecurity policies for companies. While Conagra repeatedly cites to deposition portions "71:3–80:7, 85:3-90:1" addressed to Lanterman's training in digital forensics (Dkt. 751 at 9, 11), it inexplicably fails to cite other portions of Lanterman's deposition, which discuss and address Lanterman's real-world, on-the-job experience conducting cybersecurity audits for clients using the NIST CSF (*e.g.*, Dkt. 751-05 at 22-23 (80:15-83:6)).

Conagra also misrepresents Lanterman's testimony regarding his use of and experience with the NIST CSF. Conagra claims Lanterman "testified that he ***sometimes*** refers to the NIST Cybersecurity Framework when advising clients." (Dkt. 751 at 11 (emphasis added).) However, Lanterman actually testified that he "***frequently***" refers to the NIST Cybersecurity Framework. (Dkt. 751-05 at 22 (81:15-20) (emphasis added).) This deliberate substitution of "sometimes" for "frequently" materially mischaracterizes Lanterman's relevant experience and undermines Conagra's credibility on this issue.

Conagra's motion to exclude Lanterman ignores or otherwise mischaracterizes the record evidence confirming Lanterman's experience with auditing, reviewing, and setting

8

up cybersecurity policies for real-world companies while frequently consulting the NIST CSF. Conagra's motion should be denied.

## 2. **Lanterman's professional experience is sufficient qualification; Conagra mischaracterizes the qualification requirements under Rule 702.**

### a) *Formal education is not required under Rule 702; experience alone is sufficient.*

As explained above, Lanterman's decade of experience auditing, reviewing, and setting up cybersecurity policies for companies qualifies him as an expert under Federal Rule of Evidence 702. Rule 702 permits any witness "qualified as an expert by knowledge, skill, experience, training, or education" to present "scientific, technical, or other specialized knowledge" if such information will be helpful to the jury. Fed. R. Evid. 702. "This rule envisions a 'flexible' inquiry by the trial judge . . . ." *United States v. Withorn*, 204 F.3d 790, 796 (8th Cir. 2000) (quoting *Daubert*, 509 U.S. at 594, 597).

Lanterman's real-world, on-the-job experience is sufficient qualification. Academic qualifications are not required. *See Fox*, 906 F.2d at 1256-57 ("[A]n individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise."); Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Nothing in [the 2000] amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."); *see also Speed RMG Partners*, 2024

9

WL 4543340, at \*14 (quoting advisory committee's note to 2000 amendment to Fed. R. Evid. 702). "Rule 702 'does not rank academic training over demonstrated practical experience . . . .'" *Fox*, 906 F.2d at 1256-57 (quoting *Circle J Dairy*, 790 F.2d at 700). Were the law otherwise, Conagra's own computer expert would be unqualified to offer opinions in this case as he testified that he received no training in digital forensics as part of his degree. (Dubis Decl. Exhibit 2, at 3 (20:13-15).)

Eighth Circuit decisions routinely hold that experts may be qualified based on professional experience, even where they lack formal training or academic qualification. In *Fox*, for example, the court held that the district court abused its discretion in ruling that Fox's experts were not competent to offer expert opinions on who was driving a car at the time of an accident, which contemplated "the pattern of the boys' injuries." 906 F.2d at 1257. Although the challenged experts lacked "training or education in medical science," the appellate court held that they "undoubtedly have acquired some knowledge of the medical aspects of traffic injury patterns" in their "combined 20–plus years of experience in accident reconstruction." *Id.* The court emphasized that "witnesses can acquire expertise through practical training even though they lack formal education in a particular area." *Id.* (citation omitted). Here, Lanterman's decade-long experience in auditing, reviewing, and setting up cybersecurity policies for companies qualifies him as an expert who can opine on the reasonableness of a company's information security policies, even if he does not have formal educational coursework in the area.

Likewise, in *First Union National Bank v. Benham*, the Eighth Circuit held that the district court abused its discretion in ruling that the plaintiff's legal expert was "not

10

qualified to testify as an expert to the applicable standard of practice of an Arkansas attorney." 423 F.3d 855, 861-62 (8th Cir. 2005) ("The district court's ruling cannot be reconciled with Rule 702 . . . ."). In considering the expert's qualifications, the court relied heavily on the expert's deposition testimony affirming his experience in the relevant field. *Id.* at 863 ("He answered in the affirmative when asked whether his experience made him aware of the reasonable degree of care that an attorney must apply in this case."). So too here. Lanterman's CV, which was attached to his Reports, indicates that he "regularly assists with proactive information security audits and risk assessments." (Dkt. 751-03 at 24; *see also* Dkt. 751-03 at 4 (stating in his Report that he has "regularly overseen or assisted with cybersecurity incident response engagements and audits on behalf of [CFS] clients. Cybersecurity audits and assessments proactively address vulnerabilities, technical controls (hacking countermeasures), and policies/practices to assist clients in preventing cyberattacks in the first instance.").) And his deposition testimony further expounded on this aspect of his experience. (Dkt. 751-05 at 22-23 (80:15-83:6).)

Conagra's contention that Lanterman lacks sufficient qualification to testify to the reasonableness of Schwan's data security measures is not supported by law or fact. In accord with Eighth Circuit precedent, this Court should find Lanterman is adequately qualified and deny Conagra's motion.

           b)      *Conagra's case law is distinguishable.*

Conagra's cases are readily distinguishable and do not support exclusion of Lanterman's opinions. Conagra cites *Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 609 (8th Cir. 2020), for the proposition that an expert's opinions may not exceed the scope of

11

his specialized knowledge. (Dkt. 751 at 10.) But *Hirchak* did not address the sufficiency of an expert's qualifications. *See generally id.* The word "qualified" (or any similarly rooted word) does not even appear in the decision. *Id.* Rather, *Hirchak* involved exclusion of an expert opinion that was based on insufficient facts, noting that no amount of specialized knowledge could fill the analytical gap. *Id. Hirchak* is inapplicable.

Conagra's other cases stand only for the unremarkable proposition that experts may not offer opinions outside the scope of their qualifications. In *Travelers Property Casualty Company of America v. National Union Insurance Company of Pittsburgh, PA*, the expert had training in underwriting, marketing, and brokering and work experience selling insurance as an insurance broker. 557 F. Supp. 2d 1040, 1049 (W.D. Mo. 2008). But the expert had no experience in subrogation or working in the claims department. *Id.* at 1049-51. Accordingly, the court found he was not qualified to "render an opinion on entitlement to recovery of monies through subrogation efforts." *Id.* at 1041. In *Maki v. Federal Reserve Bank of Minneapolis*, an epidemiologist was found qualified to opine on the medical value of vaccines but could not opine on the "proper response of 'prudent' employers" where the offering party conceded he had "no basis to testify regarding what might be 'ethical.'" 784 F. Supp. 3d 1191, 1210 (D. Minn. 2025). In *Hale County A & M Transp., LLC v. City of Kansas City, Mo.*, the defendant sought to use an expert with experience as a pilot and air traffic controller to opine on the adequacy of snow removal procedures. 998 F. Supp. 2d 838, 843-44 (W.D. Mo. 2014). And in *Housley v. Orteck International, Inc.*, the plaintiff offered an insurance adjuster as an accident causation expert, and the court found the

12

expert's "experience as a claims adjuster" insufficient "to qualify him as an expert in causation of tire explosions." 488 F. Supp. 2d 819, 825–27 (S.D. Iowa 2007).

Each of these cases is readily distinguishable from the facts present here. Here, the record establishes that "Mr. Lanterman regularly assists with proactive information security audits and risk assessments." (Dkt. 751-03 at 24.) His testimony confirmed that he has been conducting "policy reviews, technical control audits, as well as the evaluation of the security of specific systems and use cases" for corporate entities for a decade. (Dkt. 751-05 at 22 (80:15-81:1).) Lanterman further testified that he "frequently" refers to the NIST CSF. (*Id*. at 22 (81:15-20).) Unlike the experts in the cases Conagra cites, who had no experience in the areas of their excluded opinions, Lanterman has over a decade of experience doing the type of work that is the subject of Conagra's motion to exclude. His opinions are squarely within the scope of his expertise as defined by his real-world, on-the-job experience.

Conagra's contention that Lanterman has zero experience in cybersecurity governance (Dkt. 751 at 4, 9-13) fails in view of Lanterman's disclosures in his report (Dkt. 751-03 at 3-4, 24) and his deposition testimony concerning the same (Dkt. 751-05 at 22-23 (80:15-83:6)). Any further argument that Lanterman should be excluded because he does not have ***enough*** experience fails as a matter of law. "The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not to admissibility." *Goines v. Lee Mem'l Health Sys*., No. 217-CV-656-FTM-29UAM, 2019 WL 8334614, at *3 (M.D. Fla. Feb. 28, 2019) (quoting *Anderson v. Techtronic Indus. N. Am.,*

13

*Inc.*, 6:13–cv–1571–Orl–41TBS, 2015 WL 12843836, *2 (M.D. Fla. Apr. 14, 2015)); *see also McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.*, No. 18-1380, 2023 WL 6222427, at *3 (E.D. La. Sept. 25, 2023) (same). Lanterman is sufficiently qualified under Rule 702. Any further challenge Conagra seeks to make to the extent of those qualifications is a subject for cross examination, not exclusion.

### 3. Lanterman applied reliable methodology in developing his opinion that Schwan's took reasonable steps to protect its confidential information.

Lanterman applied reliable methodology consistent with his experience and expertise in the cybersecurity field. Conagra's argument to the contrary fails. Conagra argues: "[Lanterman] identified no experience conducting formal NIST-based enterprise assessments, no structured methodology for evaluating an organization's alignment with NIST functions or maturity tiers, and no role in designing or implementing governance-level security programs under that framework." (Dkt. 751 at 11-12.) But Conagra's argument is based on the false premise that Lanterman has no experience auditing, reviewing, or setting up cybersecurity policies for companies. Lanterman's Report identifies his experience. (Dkt. 751-03 at 4 ("I have regularly overseen or assisted with cybersecurity incident response engagements and audits on behalf of its clients. Cybersecurity audits and assessments proactively address vulnerabilities, technical controls (hacking countermeasures), and policies/practices to assist clients in preventing cyberattacks in the first instance.").) Lanterman's CV confirms the same. (*Id.* at 24.) And Lanterman repeatedly testified regarding such experience at his deposition. (Dkt. 751-05

14

at 22-23 (80:15-83:6).) Conagra's contention that Lanterman identified no relevant experience is categorically wrong.

Lanterman then applied this experience to his review of Schwan's steps to safeguard its confidential information, including trade secrets, in the same way he audits, reviews, and sets up cybersecurity policies for other companies. He reviewed Schwan's relevant security policies, including its Mobile Device Policy, Backup and Email Retention Policy, Access Control Policy, Information Security Policy, Physical Security Policy, Records Policy, Information Classification Policy, Standards of Conduct, and Business Ethics Code of Conduct. (Dkt. 751-03 at 7, 12.) He considered Schwan's Information Security Awareness Training materials. (*Id.* at 7, 14.) He considered testimony of Schwan's employees, including the June 29, 2023 deposition of Greg Quale (Schwan's Senior Director of IT Security). (*Id.* at 7, 12-13.) Lanterman confirmed consideration of these materials at his deposition. (Dkt. 751-05 at 32 (120:24-121:9).) Lanterman then compared Schwan's policies and practices to the guidance provided by the NIST CSF concerning best practices for managing cybersecurity and mitigating risk, explaining how they aligned. (Dkt. 751-03 at 13-14; Dkt. 751-04 at 5-7.) Conagra identifies nothing unreliable about this methodology.

The decision in *Upsher-Smith Labratories, Inc. v. Fifth Third Bank* is instructive. No. 16-556 (JRT/HB), 2019 WL 13235411 (D. Minn. Mar. 22, 2019). There, Upsher-Smith sought to offer expert opinions on the reasonableness of security procedures employed by Fifth Third Bank, among other things. *Id*. at *13. Fifth Third Bank argued that the experts lacked the requisite expertise and that their opinions were unreliable. *Id.* The court

15

disagreed. The court first found that the experts were sufficiently qualified based on their experience in the field. *Id.* The court then found that the opinions were reliable where "[e]ach of the experts [] reviewed the record and based their opinions on their extensive experience in banking." *Id.* Here, Lanterman is properly qualified based on his experience in the industry, and his opinions are sufficiently reliable based on the application of his experience, including his experience with the NIST CSF guidance, to the record. *Id.*

Conagra also argues Lanterman is unqualified to opine on the reasonableness of Schwan's data security measures because at his deposition he "could not recall Schwans' [*sic*] USB policy or whether USB use was permitted" (Dkt. 751 at 12), but this argument mischaracterizes Lanterman's work. While it is true that—sitting at his deposition and without the documents in front of him—Lanterman could not "recall what the policy documents specifically say" (Dkt. 751-05 at 33 (124:17-20)), that does not mean he did not review and understand the policies in reaching his opinions. Indeed, his fulsome testimony confirms his familiarity with Schwan's policies concerning USB devices, despite his inability to perfectly recall their terms from memory. (*Id.* (123:21-124:20).) Conagra, of course, did not provide Lanterman with the policies to review when asking him about their terms at the deposition, asking him instead to recall their specifics from memory "[j]ust as you're sitting here today." (*Id.* (124:12).) But an expert's deposition is not a memory test. *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 691 F. Supp. 3d 940, 960 (D. Minn. 2023), *vacated on other grounds* 109 F.4th 1095 (8th Cir. 2024). And Lanterman's inability to recall a specific aspect of a specific policy among the thousands of pages of materials he

16

reviewed in connection with his work on this case does not mean his opinions are not reliable.

Conagra's challenge to Lanterman's methodology is unsupported. If Conagra disagrees with Lanterman's conclusions, its recourse is cross examination. Conagra's motion should be denied.

**B.      Lanterman independently developed his proffered opinions; he did not inherit or adopt them from any other expert.**

**1.      <u>Conagra mischaracterizes Lanterman's development of his opinions; the record is clear he independently developed them.</u>**

Conagra's contention that "Sean performed no independent analysis" (Dkt. 751 at 15) has no support in the record. The record confirms the opposite. Lanterman testified that he conducted the substantive work reflected in his Reports, including reviewing the documents cited therein. (Dkt. 751-05 at 7 (20:16-21:1), 12 (38:20-39:4).) Lanterman logged over 150 hours on the matter between September 2021 and February 2025. (*See* Dubis Decl., Exhibit 1.) There is nothing in the record to suggest that Lanterman did not independently conduct the reported analyses and develop the reported opinions.

Conagra tries to manufacture doubt about the development of Lanterman's opinions by reference to Schwan's former expert, Mark Lanterman. Conagra argues "Sean Lanterman simply inherited his opinions from his father, Mark. . . . Rule 702 does not permit Plaintiffs to launder the opinions of a compromised expert through a substitute witness who performed no new analysis and reached no independent conclusions." (Dkt. 751 at 14-16.) But Conagra identifies no facts or admissions to support its assertions, nor can it do so. (*See id.*) Lanterman testified that he performed his analyses independently

17

from and in parallel to analyses conducted by Mark Lanterman. (Dkt. 751-05 at 7 (18:6-12), 8-9 (25:22-26:15), 10 (30:1-31:4), 18 (64:9-21).) Conagra identifies no contrary testimony. Indeed, nothing in the record supports Conagra's blatant mischaracterization of the record regarding the development of Lanterman's opinions.

Conagra further twists the record, suggesting Lanterman did *no* analyses based on his testimony that he conducted *no new* analyses after Schwan's expert substitution. (Dkt. 751 at 15.) But Lanterman was not required to perform *new* or *additional* analyses before submitting his Reports in April 2025 because he had already done them before being substituted in as the testifying expert here. (Dkt. 751-05 at 11 (34:6-17, 35:12-21, 36:6-15), 18 (63:22-64:7).) Indeed, Lanterman's billing entries confirm his significant work on this matter before Mark Lanterman's withdrawal. (*See* Dubis Decl., Exhibit 1.) Lanterman did not *inherit* or *blindly adopt* another expert's opinions. Those opinions were already his, and they were solidly grounded in his own work done before Mark Lanterman's withdrawal.

      **2.**      **<u>Conagra's cases are inapposite because Lanterman's opinions do not rely on opinions of non-testifying experts.</u>**

Conagra's cases stand for the unremarkable proposition that one expert may not blindly rely on the opinion of another non-testifying expert who is not subject to cross examination before the jury. But those cases have no application here. Lanterman independently developed each of his proffered opinions. (*See* Section IV.B.1, *supra*.) He does not rely on Mark Lanterman's opinions or analyses to support his own. (*See id.*) Nor does Conagra identify any passage of Lanterman's Reports that says otherwise. Indeed,

neither Schwan's nor Lanterman intend to refer to Mark Lanterman as the source or basis for any aspect of Lanterman's testimony. Lanterman's opinions stand entirely on their own.

The circumstances in the cases Conagra cites (Dkt. 751 at 13-14) are not present here. In *In re ResCap Liquidating Trust Litigation*, 432 F. Supp. 3d 902, 932 (D. Minn. 2020), the expert "opine[d] about an unidentified [] expert's opinion, without offering any discussion about his assessment of the validity of, the methodology used within, or the reasoning underlying the opinion, much less its factual basis." In *Clayton International, Inc. v. Nebraska Armes Aviation, LLC*, No. 8:21CV309, 2025 WL 1937621, at *6 (D. Neb. July 15, 2025), the expert "wholly adopted [another expert's] opinion regarding the cost of recreating the data package, without offering any discussion about his own assessment of the validity, the methodology used, or the reasons underlying the opinion" and "offered no independent analysis." In *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009), the appellate court affirmed exclusion of an expert "because he relied almost exclusively on [another expert's] speculative estimates without any independent verification; he conducted little if any investigation or analysis of market conditions; and he revised his opinion on damages . . . ." Each of these cases involved an expert who uncritically adopted another's conclusions without any independent analysis. That is not the situation here. Unlike those experts, Lanterman independently developed each of his proffered opinions through his own analysis. And none of Conagra's cases address the distinct circumstance of one individual within a retained expert firm being substituted for another individual at the same firm.

19

Conagra's motion to exclude Lanterman's opinions on the basis that he did not independently develop them and that he inherited them from another has no basis in law or fact. The motion should be denied.

## V.    Conclusion

For all of the reasons set forth herein, Conagra's motion should be denied, and Lanterman's testimony and opinions should be permitted in their entirety.

Dated: April 14, 2026                    By their Attorneys,

                                         *s/ Rachel Zimmerman Scobie*
                                         Rachel Zimmerman Scobie (#314171)
                                         Anneliese Mayer (#323536)
                                         Paige Stradley (#393432)
                                         Joseph Dubis (#398344)
                                         Elisabeth S. Muirhead (#399590)
                                         MERCHANT & GOULD P.C.
                                         150 South Fifth Street, Suite 2200
                                         Minneapolis, MN 55402
                                         (612) 332-5300
                                         rscobie@merchantgould.com
                                         amayer@merchantgould.com
                                         pstradley@merchantgould.com
                                         jdubis@merchantgould.com
                                         emuirhead@merchantgould.com

                                         Joshua A. Hartman (admitted pro hac vice)
                                         MERCHANT & GOULD P.C.
                                         1900 Duke Street, Suite 600
                                         Alexandria, VA 22314
                                         (703) 684-2500
                                         jhartman@merchantgould.com

                                         ATTORNEYS FOR PLAINTIFFS
                                         SCHWAN'S COMPANY and SCHWAN'S
                                         SHARED SERVICES, LLC

20